Submitted on the record July 19, ballot title referred to Attorney General
for modification August 31, 2001
Modified ballot title certified September 18, 2001 (332 Or 522, 32 P3d 894)

Steven NOVICK,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S48524)

32 P3d 890

Steven Novick, Portland, *in propria persona,* filed the petition.

Brendan C. Dunn, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With him on the answering memorandum were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, Riggs, and De Muniz, Justices.

DURHAM, J.

## DURHAM, J.

Petitioner challenges the ballot title certified by the Attorney General for Initiative Petition 38 (2002). ORS 250.085(2). The proposed initiative measure would add the following text to the Oregon Constitution:

"Section 1.   Taxpayers [*sic*] right to the highest quality services at the most competitive price. Contracts for public construction projects, including contracts to provide furnishings and/or fixtures for public buildings, shall be awarded to the contractor who submits the lowest bid to provide not less than the quality of work and/or product necessary to meet or exceed the specifications established for the project. This section applies to all public works projects undertaken by or on behalf of the state or any political subdivision of the state, including local governments and taxing districts.

"(a)   Nothing in the specifications or requirements for a public works project shall include any kind of project labor agreement; regulate the wages or benefits paid to laborers or subcontractors; require the contractor awarded the bid to pay wages or provide benefits, the total of which is greater than the contractor would be required to pay an employee if performing work for any private sector customer or client in Oregon; or give an advantage or preference to a contractor that uses union workers over a contractor that does not.

"(b)   Nothing in this 2002 Amendment requires a government entity to award a contract to a bidder that the government entity believes is not capable of satisfactorily fulfilling the contract.

"(c)   If a government entity is required by federal law to act in violation of this 2002 amendment, the government entity shall only do so to the minimum extent necessary to conform to the federal requirement.

"(d)   If any word, phrase, clause, or part of this amendment is invalidated by a court of competent jurisdiction, the remaining words, phrases, clauses, and parts shall remain in full force and effect."

For that proposed initiative measure, the Attorney General certified the following ballot title:

"AMENDS CONSTITUTION. FOR PUBLIC-WORKS CONTRACTS, ELIMINATES: EXEMPTIONS FROM COMPETITIVE BIDDING, REGULATING WAGES/BENEFITS, REQUIRING LABOR AGREEMENTS

"RESULT OF 'YES' VOTE: 'Yes' vote eliminates, for public-works contracts: exemptions from competitive-bidding process; regulating wages/benefits (including requiring prevailing wages); requiring labor agreements; union-worker preferences.

"RESULT OF 'NO' VOTE: 'No' vote retains laws requiring awarding some (but not all) public contracts to lowest responsible, qualified bidder; and payment of prevailing wages/benefits and overtime.

"SUMMARY: Amends constitution. Current law requires awarding certain public contracts through competitive bidding to lowest responsible, qualified bidder; exemptions allow other contracting methods for other contracts; requires paying prevailing wages (wages/benefits paid locally on similar projects) and increased pay for overtime. Measure requires that all contracts for public-works projects (including contracts for public buildings' furnishings, fixtures) be awarded to contractor submitting lowest bid to provide not less than the quality of work or product necessary to meet project specifications. Prohibits project requirements that: include any project labor agreement, regulate laborers' or subcontractors' wages/benefits (including requiring prevailing wages), require contractors to pay wages/benefits in amounts greater than amounts that would be required in Oregon's private sector, prefer contractors using union workers. Other provisions."

ORS 250.035(2) sets out the requirements for a ballot title caption, result statements, and summary for a state initiative measure.[1] Petitioner challenges the sufficiency of

---

[1] ORS 250.035(2) provides:

"The ballot title of any state measure to be initiated or referred shall consist of:

"(a) A caption of not more than 15 words that reasonably identifies the subject matter of the state measure. The caption of an initiative or referendum amendment to the constitution shall begin with the phrase, 'Amends Constitution,' which shall not be counted for purposes of the 15-word caption limit;

"(b) A simple and understandable statement of not more than 25 words that describes the result if the state measure is approved. The statement

each segment of the certified ballot title. This court reviews the Attorney General's ballot title for "substantial compliance with the requirements of ORS 250.035." ORS 250.085(5).

The Attorney General's ballot title caption identifies three types of legal provisions that the proposed measure would "eliminate" "for public-works contracts." Petitioner draws attention to one of those provisions: "eliminates: * * * requiring labor agreements." He argues that that phrasing is inaccurate because Oregon law currently does not require labor agreements or, more accurately, project labor agreements, for public works contracts.[2] Thus, petitioner contends, the Attorney General's caption misleads the voters into believing that, by approving the proposed measure, they

---

required by this paragraph shall include either the phrase, 'I vote' or 'vote yes,' or a substantially similar phrase, which may be placed at any point within the statement;

"(c) A simple and understandable statement of not more than 25 words that describes the result if the state measure is rejected. The statement required by this paragraph shall not describe existing statutory or constitutional provisions in a way that would lead an average elector to believe incorrectly that one of those provisions would be repealed by approval of the state measure, if approval would not have that result. Any thing or action described both in the statement required by paragraph (b) of this subsection and in the statement required by this paragraph shall be described using the same terms in both statements, to the extent practical. Any different terms must be terms that an average elector would understand to refer to the same thing or action. The statement shall include either the phrase, 'I vote' or 'vote no,' or a substantially similar phrase, which may be placed at any point within the statement; and

"(d) A concise and impartial statement of not more than 125 words summarizing the state measure and its major effect."

[2] Oregon law does not provide a special definition of the phrase "project labor agreement" that appears in section 1(a) of the proposed measure. Typically, that phrase describes an agreement between the owner or project manager of a construction project and one or more labor organizations. Such agreements commonly describe the employee working conditions, including wages, grievance procedures, and union security provisions, that will apply during the life of the project, as well as any agreements protecting the project from labor strikes and slowdowns. *See Building & Constr. Trades Council v. Associated Bldrs. Of Contractors of Mass. / R.I., Inc.*, 507 US 218, 221-22, 113 S Ct 1190, 122 L Ed 2d 565 (1993) (illustrating typical provisions of project labor agreement).

We recognize, as do the parties, that a project labor agreement is distinguishable from a collective bargaining agreement. However, contrary to petitioner's contention, we conclude that the Attorney General's phrase, "labor agreement," is, for purposes of the ballot title, an adequate shorthand reference to a "project labor agreement" and is unlikely to cause voter confusion.

would "eliminate" a "requirement" regarding labor agreements in public works contracts that, in fact, does not exist. Petitioner submits that, for the sake of accuracy, the Attorney General should have used the words "prohibits" or "repeals/prohibits," not the word "eliminates." Petitioner repeats his arguments in challenging the phrase "eliminates * * * requiring labor agreements," which also appears in the Attorney General's "yes" vote result statement.

The Attorney General responds that petitioner's criticism is not well taken because the caption "plainly tells the voters that the items following the word 'ELIMINATES' would not be allowed under the proposed measure." The Attorney General also points out that the proposed measure refers to "requirements" in the following passage: "(a) Nothing in the specifications or requirements for a public works project shall include any kind of project labor agreement * * *."

The parties acknowledge that Oregon statutes impose detailed procedures and requirements on the public contract bidding process, ORS 279.027, and impose express standards of responsibility on bidders who seek to become a "lowest responsible bidder" on a public contract, ORS 279.029. In addition, ORS 279.350(1) requires any contractor or subcontractor on a public works project to pay not less than the "prevailing rate of wage," as defined in ORS 279.348(1). ORS 279.352(1) also requires that the specifications for every public works contract include a prevailing rate of wage provision. However, the Attorney General does not take issue with petitioner's contention that current Oregon law contains no requirement that a public works contract contain a "labor agreement" or a "project labor agreement."

In *Rice v. Myers*, 326 Or 419, 423, 952 P2d 533 (1998), this court stated:

> "When a ballot title caption purports to make a representation regarding the present state of the law, the representation must not be misleading."

*Rice* involved an argument that a certified caption, "Increases Sentences for Persons with Prior Convictions for Listed Crimes," gave

"a false impression that the measure would increase sentences only for repeat offenders when, in fact, [the measure] also would affect the sentences of first-time offenders."

*Id.* Applying the principle quoted above, this court stated:

"[W]e agree that the Attorney General's certified caption could leave a reasonable reader with the misleading impression that the measure applies *only* to repeat offenders. To the contrary, Measure 53 imposes a minimum 14-month sentence, and Measure 54 imposes a minimum 18-month sentence, on persons who have never been convicted of a 'major crime.' The Attorney General's caption is *under-inclusive*. By describing the impact of the measure on one class of offenders, while excluding any reference to another class of offenders, the Attorney General's certified caption misleads the voters as to the full breadth of the measure and fails reasonably to identify the subject matter of the measure. *See, e.g., Witt v. Kulongoski*, 319 Or 7, 872 P2d 14 (1994) (illustrating this court's application of the foregoing principle in modifying an under-inclusive and, therefore, inadequate ballot title caption)."

*Id.* at 423-24.

In determining whether the Attorney General's caption in this proceeding "could leave a reasonable reader with a misleading impression," *id.* at 423, about the effect of the proposed measure on existing law, we begin with the ordinary dictionary definition of the key terms in the caption. "Eliminate," in this context, means:

"2a : to cast out : REMOVE, EXPEL, EXCLUDE, DROP, OUST * * * b : to cause the disappearance of esp. as a factor or element in a process or situation : get rid of : ERADICATE * * *."

*Webster's Third New Int'l Dictionary*, 736 (unabridged ed 1993). The dictionary furnishes the following pertinent definitions of "require," the word root for "requiring":

"2a : to ask for authoritatively or imperatively : claim by right and authority : insist upon usu. with certainty or urgency : DEMAND, EXACT * * * 3a : to call for as suitable or appropriate in a particular case * * * b : to demand as necessary or essential (as on general principles or in order to comply with or satisfy some regulation) : make indispensable * * * 5 : to impose a compulsion or command upon (as

> a person) to do something : demand of (one) that something be done or some action taken : enjoin, command, or authoritatively insist that (someone do something) * * *."

*Id.* at 1929.

In light of those definitions, we conclude that the phrase "eliminates * * * requiring labor agreements," could leave a reasonable reader with the misleading impression that the proposed measure would remove a public agency's authority under *existing* law to demand or compel acceptance of a "labor agreement" by public works contractors. As noted, current Oregon law creates no such legal authority. The Attorney General's contention that "eliminates * * * requiring" only refers to a prospective prohibition on described conduct fails to acknowledge that those words, in this context, connote the eradication of a public agency's *existing* legal authority to engage in the described conduct, *i.e.*, to demand acceptance of a labor agreement by public works contractors. Voters might evaluate the proposed measure differently if they assumed, incorrectly, from the phrasing of the caption, that Oregon public agencies were exercising existing statutory authority to require public contractors to accept labor agreements. In accordance with the discussion in *Rice*, we conclude that the likelihood that the caption could leave a reasonable reader with a misleading impression about the present state of Oregon law necessitates a modification of the caption.

The parties agree that substituting the term "prohibits" for the term "eliminates" would resolve the problem noted in the foregoing discussion. However, we express no opinion, at this point, as to the appropriate solution. We refer the ballot title to the Attorney General to make the necessary change in the caption.

For the same reasons that we determined that the caption required modification, we conclude that petitioner's identical challenge to the Attorney General's "yes" vote result statement is well taken. We also refer that part of the ballot title to the Attorney General for modification.

Petitioner makes other challenges to the Attorney General's caption, result statements, and summary.

We reject those challenges without further discussion. Except as noted above, the Attorney General's ballot title satisfies this court's substantial compliance standard of review.

For the reasons stated above, we refer the ballot title to the Attorney General for modification. ORS 250.085(8); *Flanagan v. Myers*, 332 Or 318, 30 P3d 408 (2001).

Ballot title referred to Attorney General for modification.