Argued and submitted January 4, ballot titles referred to Attorney General
for modification August 2, 2001
Ballot titles certified August 17, 2001 (332 Or 426, 30 P3d 411)

Bridget FLANAGAN,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General
for the State of Oregon,
*Respondent,*

*and.*

Greg WASSON,
*Intervenor.*

(SC S47890, S47891, S47892)
(Consolidated for Argument and Opinion)

30 P3d 408

Charles F. Hinkle, Portland, argued the cause and filed the petitions and briefs for petitioner. With him on the petitions and briefs was Stoel Rives LLP.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause and filed the responses for respondent. With him on the responses were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Philip Schradle, Special Counsel to the Attorney General.

Greg Wasson, intervenor, filed a response *pro se*.

GILLETTE, J.

## GILLETTE, J.

These consolidated ballot title review proceedings under ORS 250.085(2) concern the Attorney General's certified ballot titles for three proposed initiative measures, which the Secretary of State has denominated as Initiative Petitions 7, 8, and 9 (2002). Petitioner timely submitted written comments to the Secretary of State concerning the Attorney General's draft ballot titles and is entitled to seek review in this court. *See* ORS 250.085(2) (stating that requirement). We review the Attorney General's certified ballot titles to determine whether they "substantial[ly] compl[y] with the requirements of ORS 250.035." *See* ORS 250.085(5) (stating that standard).[1] In these proceedings, the parties agree—and we concur—that the Attorney General's certified ballot titles do not comply substantially with ORS 250.035. Under such circumstances, ORS 250.085(5) (1999)—the statute that was in effect when the petitions were filed—directed this court to certify to the Secretary of State ballot titles that do meet the statutory standard. The fundamental issue that the parties have joined here is whether this court constitutionally may carry out that function. For the reasons that follow, we conclude that legislative changes to ORS 250.085 make it unnecessary for this court to resolve that question.

On September 11, 2000, after receiving and considering petitioner's comments, the Attorney General certified the ballot titles for Initiative Petition 7,[2] Initiative Petition

---

[1] The 2001 Legislature amended ORS 250.085(5) in certain respects that we discuss *post*. Or Laws 2001, ch 802, § 2 (hereafter "HB 2213"). The Governor signed the bill on July 19, 2001. It became effective on its passage. HB 2213, § 4. The amendments to ORS 250.085(5) did not alter the "substantial compliance" standard of review.

[2] The ballot title certified by the Attorney General for Initiative Petition 7 states:

"AMENDS CONSTITUTION: REQUIRES OWNERS OF PRIVATE PROPERTY OPEN TO PUBLIC TO PERMIT FREE SPEECH ON ALL SUBJECTS

"RESULT OF 'YES' VOTE: 'Yes' vote requires owners of private property open to public to permit free speech on all subjects, including petitioning, political campaigning, commercial advertising, religion, obscenity.

"RESULT OF 'NO' VOTE: 'No' vote rejects requiring owners of private property open to public to permit free speech on all subjects, including petitioning, political campaigning, commercial advertising, religion, obscenity.

## 8,[3] and Initiative Petition 9.[4] Each of the proposed measures

"SUMMARY: Amends constitution. *Constitution now entitles persons to collect initiative signatures on public property and at large private shopping centers,* subject to reasonable restrictions to prevent interference with the owners' business, but grants no right to engage in other types of speech or expressive activity on any private property. Measure would extend the right of free speech "on any subject whatever" to interior and exterior areas of all private property open to the general public, without exception. Measure thus would require owners of such property to permit all expressive activities, including circulation of petitions and solicitation of signatures for initiative petitions; political campaigning; commercial advertising; religious speech; and obscenity. Measure would prohibit the application of civil and criminal trespass laws to nullify or detract from that right."

(Emphasis added.)

[3] The ballot title certified by the Attorney General for Initiative Petition 8 states:

"AMENDS CONSTITUTION: EXPANDS RIGHT TO PETITION
FREELY TO ALL LOCATIONS IN PRIVATELY-OWNED
BUSINESSES OPEN TO PUBLIC

"RESULT OF 'YES' VOTE: 'Yes' vote expands signature-gathering right, requiring owner of any private business open to public to permit citizens to solicit petition signatures anywhere on premises.

"RESULT OF 'NO' VOTE: 'No' vote rejects expanding signature-gathering right to require privately-owned businesses open to public to permit citizens to solicit petition signatures anywhere on premises.

"SUMMARY: Amends constitution. *The Oregon Constitution now entitles persons to collect initiative signatures on public property and at large private shopping centers,* subject to reasonable restrictions to prevent interference with the owners' business, but grants no right to solicit signatures on other private property. The measure would extend citizens' right to petition, entitling citizens to petition freely in any privately-owned business to which the public is invited. The measure thus would require owners of such businesses to permit citizens to solicit petition signatures, without interference, at all interior and exterior areas of those businesses, without exception. The measure would prohibit the application of civil and criminal trespass laws to nullify or detract from that right."

(Emphasis added.)

[4] The ballot title certified by the Attorney General for Initiative Petition 9 states:

"AMENDS CONSTITUTION: EXPANDS PETITIONING RIGHT
TO ALL PRIVATELY-OWNED BUSINESSES OPEN TO PUBLIC,
SUBJECT TO REASONABLE REGULATION

"RESULT OF 'YES' VOTE: 'Yes' vote expands signature-gathering right, requiring owners of private businesses open to public to permit citizens to solicit petition signatures, subject to reasonable regulation.

"RESULT OF 'NO' VOTE: 'No' vote rejects expanding signature-gathering right to require privately-owned businesses open to public to permit citizens to gather signatures subject to reasonable regulation.

"SUMMARY: Amends constitution. *The Oregon Constitution now entitles persons to collect initiative signatures on public property and at large private*

purports to expand rights of political speech on private property, particularly the right to gather signatures to qualify initiative petitions for the ballot. As written, the measures seek to expand and confirm the right to gather signatures in shopping centers that this court had recognized in *Lloyd Corporation v. Whiffen*, 315 Or 500, 849 P2d 446 (1993). The emphasized parts of each of the ballot titles set out above identify the rule of law stated in *Whiffen. Id.* at 514.

Three days after the Attorney General's certifications, however, this court issued *Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 11 P3d 228 (2000). That case overruled *Whiffen* and held that petitioners seeking signatures to qualify initiative petitions for the ballot do not have a constitutional right to solicit signatures on private property, such as shopping centers, without the owner's permission.

Petitioner then filed the present challenges to the Attorney General's ballot titles, arguing that the summaries in the ballot titles misstate the law. Before *Stranahan*, it arguably would have been correct to state, as two of the summaries did, that the proposed constitutional amendments would "extend" the signature-gathering right. It also arguably would have been correct to state, as all three of the summaries did, that the Oregon Constitution "now entitles persons to collect initiative signatures on public property and at large private shopping centers, subject to reasonable restrictions to prevent interference with the owners' business." After *Stranahan*, however, neither statement is correct.

■■ A ballot title must not misstate existing law, either directly or by implication. *Adams v. Kulongoski*, 323 Or 253, 259, 915 P2d 967 (1996); *see also* ORS 250.035 (setting out statutory requirements for ballot titles). It is uncontested

---

*shopping centers*, subject to reasonable restrictions to prevent interference with the owners' business, but grants no right to solicit signatures on other private property. The measure would extend citizens' right to petition, entitling citizens to petition freely in any privately-owned business to which the public is invited, subject to reasonable time and place regulations. The measure thus would require owners of such businesses to permit citizens to solicit petition signatures, at all interior and exterior areas of those businesses, imposing only reasonable time and place regulations. The measure would prohibit the application of civil and criminal trespass laws to nullify or detract from that right."

that, after this court's decision in *Stranahan*, the ballot titles for Initiative Petitions 7, 8, and 9 misstate existing law.

Until the 2001 Legislative Assembly amended it, ORS 250.085(5) required this court both to "review the title for substantial compliance with the requirements of ORS 250.035" and, if the Attorney General's ballot title did not so comply, to "certify a title meeting this standard to the Secretary of State." ORS 250.085(5) (1999). Under the 1999 statutory scheme, if a petitioner correctly identified deficiencies in the Attorney General's ballot title, then there was only one way that this court could carry out its duty under ORS 250.085(5) to "certify a title meeting [the statutory] standard": The court was required to write a different ballot title.

In the past, pursuant to that legislative directive, this court has rewritten many infirm ballot titles. *See, e.g., Starrett v. Myers*, 330 Or 139, 998 P2d 671 (2000) (revising ballot titles to comply with ORS 250.035); *Zehner v. Myers*, 330 Or 162, 5 P3d 600 (2000) (same). Nonetheless, some members of this court from time to time had expressed misgivings with the foregoing procedure, suggesting that this court's writing or rewriting of ballot titles might violate the constitutional principle of separation of powers. *See Dudley v. Jenks*, 331 Or 1, 10-11, 10 P3d 257 (2000) (summarizing cases in which those concerns had been expressed). Before petitioner brought the present proceedings, however, parties had not focused their briefing on that constitutional issue. Now, the enactment of HB 2213 obviates any need to address those concerns.

In HB 2213, the legislature deleted the phrase "and shall certify a title meeting this standard to the Secretary of State" from ORS 250.085(5) and added three new subsections—(8), (9), and (10)—to that statute. We set them out in their entirety here, because they form the basis for our disposition of this case:

"(8) If the Supreme Court determines that the title certified by the Attorney General or prepared by the Legislative Assembly substantially complies with the requirements of ORS 250.035, the court shall certify the title to the Secretary of State. If the Supreme Court determines that the title certified by the Attorney General or prepared by

the Legislative Assembly does not substantially comply with the requirements of ORS 250.035, the court shall modify the ballot title and certify the ballot title to the Secretary of State *or* refer the ballot title to the Attorney General for modification.

"(9) Not later than five business days after the Supreme Court refers a ballot title to the Attorney General under this section, the Attorney General shall file a modified ballot title with the Supreme Court and serve copies of the modified ballot title on all parties to the ballot title review proceeding. If no party to the ballot title review proceeding files an objection to the modified ballot title within five business days after the date the modified ballot title is filed, the Supreme Court shall certify the modified ballot title to the Secretary of State and enter an appellate judgment the next judicial day. If any of the parties to the ballot title review proceeding timely files a petition objecting to the modified ballot title, the Supreme Court shall review the modified ballot title to determine whether the modified ballot title substantially complies with the requirements of ORS 250.035.

"(10) Upon the filing of a petition under subsection (9) of this section objecting to a modified ballot title:

"(a) If the Supreme Court determines that the modified ballot title substantially complies with the requirements of ORS 250.035, the court shall certify the modified ballot title to the Secretary of State; or

"(b) If the Supreme Court determines that the modified ballot title does not substantially comply with the requirements of ORS 250.035, the court shall modify the ballot title and certify the ballot title to the Secretary of State *or* refer the modified ballot title to the Attorney General for additional modification and further proceedings under subsection (9) of this section."

HB 2213, section 2 (emphasis added).

As the emphasized parts of the newly enacted subsections demonstrate, the statute no longer requires this court, whenever it concludes that the ballot title certified by the Attorney General fails to comply substantially with the requirements of ORS 250.035, to write and certify to the Secretary of State a corrected ballot title.[5] Instead, the statute

---

[5] The newly enacted subsection (3) of ORS 250.085 specifically is made applicable to pending ballot title review cases by HB 2213, § 3(2).

gives the court the discretion either: (1) to revise and certify to the Secretary of State a legally sufficient ballot title; or (2) to "refer" the matter to the Attorney General to correct the deficiencies in the ballot title.

As we have explained, this is a case in which the Attorney General's certified ballot titles do not comply substantially with the requirements of ORS 250.035. The question thus becomes: Which of the two alternative dispositional models provided in the newly enacted ORS 250.085(8) shall this court utilize?

The answer is not difficult. Referring the matter to the Attorney General raises no constitutional issues respecting the proper role of the judiciary and the separation of powers. Given the uncertainty and delay that necessarily would attach to any effort by this court to address the constitutional issues further, we perceive no reason to follow that option in this case.

Having identified the ways in which each of the three ballot titles certified by the Attorney General fails to comply substantially with the requirements of ORS 250.035, we refer the ballot titles to the Attorney General for modification.

Ballot titles referred to the Attorney General for modification.