Submitted on the record July 19, ballot title referred to Attorney General for modification November 8, 2001

Lon T. MABON,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent,*

*and*

Ann JACKSON,
Hannah Davidson, Jeana Frazzini,
Stephanie Van Zuiden, and Jann Carson,
*Intervenors.*

(SC S48518)

33 P3d 988

Lon T. Mabon, *pro se*, filed the petition.

Holly A. Vance, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With her on the memorandum were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Charles F. Hinkle, ACLU Foundation of Oregon, Inc., Portland, filed the memorandum for intervenors Stephanie Van Zuiden and Jann Carson.

Eli D. Stutsman, Portland, filed the memorandum for intervenors Ann Jackson, Hannah Davidson, and Jeana Frazzini.

LEESON, J.

Durham, J., dissented and filed an opinion in which Riggs and Balmer, JJ., joined.

## LEESON, J.

This ballot title review proceeding, brought under ORS 250.085(2), concerns the Attorney General's certified ballot title for a proposed initiative measure that the Secretary of State has denominated as Initiative Petition 34 (2002).[1] Petitioner challenges the caption, the "yes" and "no" vote result statements, and the summary of the Attorney General's certified ballot title. For the reasons explained below, we hold that the caption does not comply substantially with statutory requirements. We refer the ballot title to the Attorney General for modification. ORS 250.085(8); *Flanagan v. Myers*, 332 Or 318, 323-24, 30 P3d 408 (2001).

The proposed measure would amend the Oregon Constitution by adding to Article I, section 1, the following text:

"(1)   God Almighty gives Human Life. In the womb, He forms a Human Being. At the beginning of that process, it is God, not man, who establishes Human Personhood. Therefore, we the People of the state of Oregon, in humility and obedience to Nature's God, the Lord of Heaven and earth, shall keep safe from mortal harm all innocent Human Life, acknowledging and protecting the Human Person from the moment of fertilization until natural death, so help us God."

██ The Attorney General certified the following ballot title:

"AMENDS CONSTITUTION. PROHIBITS: ABORTION;
PHYSICIAN AID-IN-DYING; CERTAIN PAIN-
CONTROL, BIRTH-CONTROL METHODS;
OTHER 'MORTAL HARM'

"RESULT OF 'YES' VOTE:   'Yes' vote prohibits abortion, physician aid-in-dying, certain pain-control and birth-control methods, other 'mortal harm'; 'protects' 'person' from fertilization until 'natural death.'

---

[1] Intervenors filed a motion to intervene on June 25, 2001. Petitioner filed a document entitled "Petition for Declaratory Judgment" on July 13 challenging this court's authority to permit intervenors to respond to petitioner's challenge to the Attorney General's certified ballot title. We treat that document as a response to intervenors' motion to intervene and dismiss it as untimely. *See* ORAP 7.05(3) (setting 14-day limit on time for filing response to motion).

"RESULT OF 'NO' VOTE: 'No' vote retains current laws allowing abortion, physician aid-in-dying, pain-control and birth-control methods; rejects 'protecting' 'person' from fertilization until 'natural death.'

"SUMMARY: Amends constitution. Under current law, abortion permitted before fetus becomes viable outside womb; after viability, abortion allowed if women's life endangered; woman may use birth-control methods effective after fertilization, including IUD's, morning-after pill, some oral contraceptives; pain control permitted that may hasten death; competent terminally-ill patient may choose physician-hastened death under Death with Dignity Act. Measure declares that 'God Almighty,' not man, establishes 'Human Personhood' at fertilization. Measure requires citizens, 'in humility and obedience to Nature's God,' to 'protect' from 'mortal harm' all 'innocent Human Life,' [']acknowledging,' 'protecting' 'Human Person' from fertilization until 'natural death.' Measure does not define terms quoted above. Measure prohibits abortion, physician aid-in-dying, birth-control methods taken after conception, pain control that may hasten death."

ORS 250.035(2)(a) provides that a ballot title for a proposed state measure shall include "[a] caption of not more than 15 words that reasonably identifies the subject matter of the state measure." The caption is the "cornerstone for the other portions of the ballot title." *Greene v. Kulongoski*, 322 Or 169, 175, 903 P2d 366 (1995). As the "headline" for the ballot title, the caption "provides the context for the reader's consideration of the other information in the ballot title." *Id.* A caption complies substantially with the requirements of ORS 250.035(2)(a) if it identifies the subject matter of the proposed measure in terms that will not confuse or mislead potential petition signers and voters. *Id.* at 174-75. A caption that catalogues the effect of a proposed measure, without identifying its subject matter, is inadequate. *Carson v. Myers*, 326 Or 248, 254, 951 P2d 700 (1998).

Petitioner contends that the Attorney General's caption fails to comply substantially with ORS 250.035(2)(a) because it fails to identify reasonably the subject matter of the proposed measure. Instead, petitioner contends, the Attorney General's caption is a "mini-summary" that lists conduct that the proposed measure would prohibit, thereby

describing its major effects on Oregonians' existing legal rights and duties. The Attorney General defends the caption on the ground that it provides what the Attorney General believes to be the "critical information" that voters should receive about conduct that the proposed measure would prohibit if it were to become the law of Oregon.

In determining whether a caption reasonably identifies the subject matter of a proposed measure, this court examines the text of the proposed measure itself. *Earls v. Myers*, 330 Or 171, 175, 999 P2d 1134 (2000). In this case, the proposed measure consists of four sentences. The fourth sentence states that the people of the State of Oregon "shall keep safe from mortal harm all innocent Human Life, acknowledging and protecting the Human Person from the moment of fertilization until natural death." The first three sentences in the proposed measure explain the rationale for the fourth sentence. The text of the proposed measure thus makes clear that its subject matter is stated in the fourth sentence, that is, in the promise that the people of Oregon will protect some human life from fertilization until natural death. The Attorney General must identify that subject matter.[2] Although there is no categorical prohibition against also listing certain consequences, such as prohibited conduct, in the caption, any such list may not interfere with reasonably identifying the subject matter of the proposed measure.

In this case, the Attorney General's catalogue of conduct that the Attorney General believes the proposed measure would prohibit has interfered with the Attorney General's task of reasonably identifying the subject matter of the proposed measure. To the extent that the Attorney General's caption identifies the subject matter of the proposed measure at all, the caption states only that the proposed measure

---

[2] The text of the proposed measure uses the phrase "innocent human life." This court has criticized the Attorney General for using terminology in a ballot title that mirrors wording used in the proposed measure itself, if the terminology "is not neutral and might mislead voters into supporting the proposal without understanding its true effects." *See Earls*, 330 Or at 176 (declaring phrase "freedom to choose" likely to prejudice voters). The Attorney General might conclude that the adjective "innocent" is not neutral and might mislead voters. Nothing in this opinion prohibits the Attorney General from exercising his judgment in identifying the subject matter of the proposed measure using neutral terms.

would prohibit "other 'mortal harm.' " That truncated statement demonstrates the problem of choosing to describe some of the likely effects of the proposed measure, rather than identifying its subject matter. The statement in the caption that the proposed measure would prohibit "other mortal harm" implies that the subject matter of the proposed measure includes a promise to prohibit *all* "mortal harm" to human life, including abolishing the death penalty. The text of the proposed measure makes clear that its subject matter is a promise to protect only *some* human life from mortal harm. Because even that part of the Attorney General's caption does not identify reasonably the subject matter of the proposed measure, the caption does not comply substantially with the statutory requirement, and the Attorney General must modify it. We refer the ballot title to the Attorney General for that purpose.

■ We turn to petitioner's challenge to the "yes" and "no" vote result statements. A "yes" vote result statement must describe in simple and understandable terms of 25 words or fewer the result if a proposed measure is approved. ORS 250.035(2)(b). A "yes" vote result statement must describe accurately the result if the proposed measure is approved, *Prozanski v. Myers*, 326 Or 391, 395, 952 P2d 531 (1998), and it should be written so that an affirmative response to the statement corresponds to an affirmative vote on the proposed measure, ORS 250.035(4). A "no" vote result statement should be written so that, to the extent possible, the wording of the "yes" vote result statement and "no" vote result statement is parallel. ORS 250.035(3).

■ Petitioner asserts that he objects to the Attorney General's "yes" and "no" vote result statements, but he advances no argument about why those statements do not comply substantially with the statutory requirements. We therefore decline to require the Attorney General to modify the "yes" and "no" vote result statements on remand. We note, however, this court's observation that, when a caption must be modified, it also may be appropriate to make conforming changes to the result statements. *See Phillips v. Myers*, 325 Or 221, 227, 936 P2d 964 (1997) (describing court's practice of making conforming changes to result statements when modifying caption).

■     We turn to petitioner's contention that the Attorney General's summary fails to comply with ORS 250.035(2)(d) because it does not summarize concisely and impartially the proposed measure and its major effect. This court has explained that the purpose of a summary is to "help voters understand what will happen if the measure is approved" and "the breadth of its impact." *Fred Meyer, Inc. v. Roberts,* 308 Or 169, 175, 777 P2d 406 (1989). We have considered petitioner's arguments in light of that purpose and conclude that his arguments are not well taken. Nonetheless, in light of the changes that the Attorney General must make to the caption and may choose to make to the result statements, he may find it appropriate to reconsider the wording of the summary as well. Our holding that the summary complies substantially with the statutory requirement should not be understood as preventing the Attorney General from modifying the summary, should he find it appropriate to do so.

Ballot title referred to the Attorney General for modification.

**DURHAM, J.,** dissenting.

I dissent from the majority's decision to require the Attorney General to modify the caption of the ballot title certified by the Attorney General.

Two errors of law undermine the majority's conclusion. The first concerns the majority's failure to comply with ORS 250.085(6), which provides:

> "When reviewing a title prepared by the Attorney General, the court shall not consider arguments concerning the ballot title not presented in writing to the Secretary of State unless the court determines that the argument concerns language added to or removed from the draft title after expiration of the comment period provided in ORS 250.067."

ORS 250.085(6) forbids this court to consider any argument about asserted deficiencies in the Attorney General's ballot title unless the petitioner presented the same argument in writing to the Secretary of State. *See* ORS 250.067(1) (describing procedure for submission of written comments to Secretary of State regarding Attorney General's draft ballot title). This court has not hesitated to apply the

prohibition in ORS 250.085(6) when other petitioners have attempted to challenge ballot titles on grounds not raised in written comments to the Secretary of State. *See Starrett/ Nichols v. Myers*, 330 Or 139, 143-44, 998 P2d 671 (2000) (declining to consider arguments not raised in written comments to Secretary of State); *McCoid v. Kulongoski*, 321 Or 452, 454, 900 P2d 1028 (1995) (same). In other contexts, this court applies differing standards regarding the preservation of error by a party on appeal. *See State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988) (drawing attention to distinctions between raising issue at trial, identifying source for claimed position, and making particular argument; stating that "[t]he first ordinarily is essential, the second less so, the third least"). In the ballot title context, ORS 250.085(6) establishes an unambiguous, bright-line standard that confines the court's review to the arguments that the petitioner raised in comments to the Secretary of State. The statute also permits consideration of arguments regarding wording added to or removed from the draft ballot title after expiration of the comment period, but that qualification plays no role in the present proceeding.

The reasons for the legislative policy embodied in ORS 250.085(6) are both obvious and important. The Attorney General has the principal statutory responsibility for preparing ballot titles for certain state measures, *see* ORS 250.065(3), (4) (describing role of Attorney General in drafting ballot titles); ORS 250.067(2) (same), and must do so within short time periods. ORS 250.067(2) requires the Attorney General, in deciding whether to revise a draft ballot title, to "consider any written comments submitted" by members of the public under ORS 250.067(1). Consideration by this court of arguments that a petitioner failed to submit during the comment phase frustrates the Attorney General's responsibility to consider written comments under ORS 250.067(1) before certifying a ballot title, wastes the time of those who perform the ballot title drafting function under demanding conditions, and effectively substitutes this court for the Attorney General as the entity that bears principal responsibility for the preparation of ballot titles.

In the present case, petitioner submitted written comments regarding the Attorney General's draft ballot title. Petitioner complained that the beginning phrase, "Bans

Abortion," was a main effect of the proposal but not its subject matter. He acknowledged that the proposal also would terminate certain other practices mentioned in the Attorney General's caption. He argued, however, that the Attorney General's caption fell short for one reason: it failed to disclose, in the words of the proposal, that "God Almighty gives Human Life," and he emphasized repeatedly that that was the proposal's subject matter and the very reason for the proposal's emphasis on protecting human life from fertilization until natural death. In summary, petitioner complained that the Attorney General's caption was inadequate because it failed to disclose the *reason* that the proposed measure would ban certain practices, such as abortion, *i.e.*, "that Almighty God is the Source of that Life and that is why it should be protected."

ORS 250.085(6) permits the court to address only the argument that petitioner submitted in writing to the Secretary of State. However, the majority never addresses that complaint. Instead, the majority recasts the issue concerning the caption as a debate over the Attorney General's use of the acknowledged consequences of the proposal to describe its subject matter, rather than the proposal's more general wording that it would protect "innocent human life" from fertilization until natural death. In addition, the majority goes on to consider another argument that petitioner never submitted to the Secretary of State, *i.e.*, whether the Attorney General's phrase, "other mortal harm," might be misleading, because it might suggest that the proposal would abolish the death penalty.

At no time, including on review in this court, has petitioner ever claimed, as the majority now suggests, that the phrase "other mortal harm" in the Attorney General's caption is misleading or inaccurate,[1] or conveys a false message about the proposal's possible impact on the death penalty. In my view, the majority's decision to require a modification of the caption for reasons that petitioner never

_____

[1] It is worth noting that petitioner himself incorporated the unqualified phrase "mortal harm" in the caption of the ballot title that he recommended to the Attorney General. Petitioner's recommended caption stated: "Amends Constitution: God Gives Life, All Human Beings Protected from Mortal Harm, From Fertilization until Natural Death." The Attorney General could not have divined, from petitioner's proposed caption and the accompanying argument, that petitioner believed

submitted to the Secretary of State or this court violates the prohibition expressed in ORS 250.085(6).

The second flaw in the majority's analysis is its failure to conclude that the Attorney General's description of the principal consequences of the proposal substantially complies with his obligation to state accurately the proposal's "subject matter." The parties' legal dispute centers on their differing constructions of the requirement in ORS 250.035(2)(a) that the ballot title caption must "reasonably identif[y]" within 15 words "the subject matter" of the proposed measure. Instead of addressing the meaning of those key statutory phrases, the majority lists a series of words or phrases, drawn from this court's cases, that describe the *function* of a ballot title caption, such as "cornerstone," "headline," and "context for the reader's consideration of the other information in the ballot title." 332 Or at 637 (quoting *Greene v. Kulongoski*, 322 Or 163, 175, 903 P2d 366 (1995)). That approach to statutory construction fails to answer the legal issue before the court and departs markedly from this court's precedents regarding statutory construction.

The majority opinion invites the reader to assume that the statutory phrase, "subject matter," has an accepted definition, which the majority never articulates, and asserts that that unstated definition precludes the Attorney General's description of the subject matter here. As the following discussion demonstrates, the correct construction of "subject matter" in this context supports the Attorney General's approach to drafting the caption. At a minimum, the Attorney General's caption substantially complies with the requirement that it "reasonably identif[y]" the proposed measure's subject matter.

The task of determining the meaning of the phrase, "subject matter," involves a search for the legislature's intention in using that phrase in ORS 250.035(2)(a). A plethora of this court's cases describe how this court ordinarily approaches that task, including the following recent statement in *Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 354-55, 15 P3d 29 (2000):

---

that the reference to a prohibition on "mortal harm" somehow expanded the subject of the measure into a ban on the death penalty, as the majority now claims.

> "To determine the legislature's intent, we first examine the text and context of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). Context includes other provisions of the same statute and other related statutes. *Id.* at 611. In analyzing text and context, 'words of common usage typically should be given their plain, natural, and ordinary meaning.' *Id.* If the legislature's intent is clear from the examination of text and context, then our inquiry is at an end. *Id.*"

No statute provides a special definition of the statutory phrase "subject matter." Accordingly, we must construe that phrase in accordance with its plain, natural, and ordinary meaning. *Webster's Third New Int'l Dictionary*, 2276 (unabridged ed 1993), defines "subject matter" in the following pertinent ways:

> "**2 :** matter presented for consideration: as **a :** the essential facts, data, or ideas that constitute the basis of spoken, written, or artistic expression or representation; *often* : substance as distinguished from the form esp. of an artistic or literary production **b :** a subject of thought or study; *often* : conveyable material (as information, knowledge, skill) actually made available by a branch of knowledge or in a course of study : the available factual content of a branch or course as distinct from technique or method of instruction or factors inherent in the individual learner **c :** the topic of dispute in a legal matter."

Several features of that definition are noteworthy. The initiative petition proposes an amendment to the Bill of Rights of the Oregon Constitution. *One* reasonable method of describing accurately the "matter presented for consideration" in a proposed constitutional amendment is to specify the changes that the initiative would produce regarding the legal rights that Oregon citizens enjoy under the current Oregon Bill of Rights or other laws. The Attorney General has taken that approach, and he contends that his description of the proposed constitutional changes is accurate. Neither petitioner nor the majority makes any attempt to demonstrate that the Attorney General is wrong.

The definition of "subject matter" also refers to

"the *essential facts, data, or ideas* that constitute the *basis* of spoken, written, or artistic expression or representation; *often* : substance as distinguished from the form * * *."

*Id.* (some emphasis added). That definition permits the Attorney General to focus the caption, as he did here, on the impact of the proposed constitutional amendment on the rights of the people under current law, rather than on the wording that the drafter of the initiative amendment has chosen.

The majority knows that those who draft proposed initiatives sometimes seek to achieve significant legal consequences without identifying those consequences in the wording of the proposed measure. In preparing a caption, on the other hand, the Attorney General's touchstones are accuracy and clarity, which often preclude a slavish devotion to the particular words or phrases selected by the proponent of the measure. Indeed, in *Earls v. Myers*, 330 Or 171, 176, 999 P2d 1134 (2000), this court concluded that the Attorney General had acted improperly in incorporating the phrase "freedom to choose" from the text of a proposed measure into the ballot title caption:

"We agree with petitioner that, in this context, the phrase 'freedom to choose' is likely to prejudice voters regarding the measure. *See Marr v. Thornton*, 237 Or 503, 504, 392 P2d 458 (1964) (deleting phrase 'right-to-work' from ballot title caption as slogan that amounted to argument for measure and that likely would create prejudice). It is true that the phrase 'freedom to choose' appears in the measure itself. However the Attorney General and this court are not constrained to certify a ballot title that is slanted toward passage or defeat of the measure. *See Dirks v. Myers*, 329 Or 608, 616, 993 P2d 808 (2000) (court has resisted attempts to incorporate into ballot title terms or phrases that 'tend more to promote or defeat passage of the measure than to describe its substance accurately'). Proponents of a measure are not entitled to engineer a favorable ballot title by incorporating politically inflated terms or phrases in the text of the measure in order to advance its passage. *Cf. Bernard v. Keisling*, 317 Or 591, 596-97, 858 P2d 1309 (1993) (court will not hesitate to look beyond

words of measure if those words obfuscate subject, chief purpose, summary, or major effect of measure)."

In this case, the Attorney General has done exactly what this court said that he should have done in *Earls*. The proposed initiative addresses legal and moral topics that are among the most controversial in contemporary life, *i.e.*, the moment at which human life begins and the extent to which society should regulate activities that affect the beginning and end of human existence. The proposal incorporates repeated references to God as well as various undefined terms and phrases, such as "keep safe from mortal harm" and "innocent Human Life" that, according to the Attorney General, fail to disclose the proposal's substance and simply tend to promote its passage. The Attorney General has resisted inserting undefined and politically charged phraseology from the proposal to avoid creating prejudice or sympathy for the proposed measure. The Attorney General has chosen, instead, to set out the practical consequences of the proposed initiative on the existing legal rights of Oregon's citizens. *Earls* expressly supports that approach. The majority faults the Attorney General for doing so, but fails to demonstrate why the Attorney General's approach is not within the range of his permissible options under ORS 250.035(2)(a) and *Earls* to "reasonably identif[y]" the proposal's "subject matter."

I agree with the majority's decision to decline to modify the Attorney General's certified "yes" and "no" vote result statements and the summary, because petitioner raises no argument about why those segments of the certified ballot title fall short of statutory requirements. In light of the majority's decision, the Attorney General may alter the result statements or the summary if he deems a change necessary, but he has discretion to decide whether to change those parts of the ballot title. The Attorney General is not under any compulsion from the court to change those parts of the certified ballot title in any way. The only opinion that the court reaches, in its review under ORS 250.085(5) of the Attorney General's result statements and summary, is the unanimous conclusion that those segments substantially comply with the requirements of ORS 250.035(2)(b), (c), and (d).

For the reasons stated above, I dissent from the majority's decision to require a modification of the Attorney General's certified caption.

Riggs and Balmer, JJ., join in this opinion.