Submitted on the record August 19, ballot title referred to the Attorney
General for modification November 28, reconsideration denied December 23, 2003

Debralee M. WYANT,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent,*

*and*

Dr. Mark NICHOLS,
Kitty Piercy, Nancy Bennett, and Caroline Fitchett,
*Intervenors.*

(SC S50490)

Dr. Mark NICHOLS,
Kitty Piercy, Nancy Bennett, and Caroline Fitchett,
*Petitioners,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S50493)
(Consolidated for Opinion)

81 P3d 692

Kelly W.G. Clark, O'Donnell & Clark, LLP, Portland, filed the petition for petitioner Wyant. With him on the petition was Kristian Roggendorf.

Katherine A. McDowell, Portland, filed the petition for petitioners Nichols, Piercy, Bennett, and Fitchett. With her on the petition was Jennifer E. Horan.

Judy C. Lucas, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With her on the answering memorandum were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Katherine A. McDowell, Portland, and Jennifer E. Horan, appeared for intervenors.

DURHAM, J.

**DURHAM, J.**

In this consolidated ballot title proceeding under ORS 250.085(2), petitioners contend that the Attorney General's ballot title regarding Initiative Petition 40 (2004) does not comply substantially with the requirements of ORS 250.035.[1] *See* ORS 250.085(5) (describing that standard for judicial review of ballot title). Initiative Petition 40, if adopted, would amend ORS 677.097, which now requires a physician or podiatric physician and surgeon to disclose certain information to a patient to obtain the patient's informed consent to a procedure or treatment. The amendment, if adopted, would require a "health care provider" to make additional disclosures and fulfill new procedural duties if the patient is "[a]ny woman seeking an abortion * * *."

Appendix A to this opinion sets out the text of Initiative Petition 40. For that proposed measure, the Attorney General certified the following ballot title:

"REQUIRES MEDICAL PROVIDERS MAKE
SPECIFIED STATEMENTS TO PATIENTS
BEFORE ABORTIONS, REPORT COMPLIANCE;
REQUIRES INFORMATION PUBLICATION

"RESULT OF 'YES' VOTE:  'Yes' vote requires medical provider to: provide specified statements to patient 24 hours before abortion, report compliance; requires state to publish specified information about abortions.

"RESULT OF 'NO' VOTE:  'No' vote retains current law requiring medical provider to obtain patient's informed consent to abortion after explanation of risks and alternatives; retains current statistical reporting.

"SUMMARY: Current law requires physician to: obtain patient's informed consent for abortion by explaining in general terms the procedure, risks, alternative treatments/procedures; provide more information on request. Measure requires medical provider to have conversation

---

[1] Petitioner Wyant challenges the caption and the "yes" and "no" result statements, but not the summary in the ballot title that the Attorney General certified. The Nichols petitioners challenge each segment of the Attorney General's ballot title.

with patient at least 24 hours before abortion about abortion risks, gestational age of fetus, medical risks of pregnancy. Requires provider, before abortion, to: make specified statements about medical benefits, child support; receive patient's written certification indicating statements were made. Expands current reporting requirements to include whether and how statements were made to patient. Requires state to print and place on website specified materials containing: specified information about abortion, services available for pregnancy, childbirth, care of children; showing visual representations of fetuses. Provides no funding for additional state duties. Other provisions."

We have examined the contentions of petitioner Wyant regarding the Attorney General's ballot title and conclude that none is well taken. An opinion explaining in detail the basis for that conclusion would not benefit the parties, the bar, or the public. However, for the reasons explained below, some of the arguments that the *Nichols* petitioners advance are well taken and require a modification of the ballot title that the Attorney General has prepared.

## OREGON'S LAW OF INFORMED CONSENT

■ A brief discussion of the law of Oregon regarding "informed consent" is necessary for a proper understanding of the dispute presented here. As a general matter, the phrase "informed consent" refers to a physician's duty to inform a patient of the health risks involved in a proposed medical procedure and the availability of feasible alternative procedures. This court held in *Mayor v. Dowsett*, 240 Or 196, 233, 400 P2d 234 (1965), that a physician's failure to obtain a patient's consent before performing an operation "would * * * be a violation of the established standard of care and actionable as malpractice." In *Mayor*, the court remanded the case for a jury trial on the question of informed consent, because the evidence was sufficient to create a factual question whether the defendant doctor had informed the plaintiff before surgery of known dangers from a spinal anesthetic. *Id.* at 235.

In *Getchell v. Mansfield*, 260 Or 174, 180-83, 489 P2d 953 (1971), the court clarified that the physician's responsibility to warn of risks extends only to material risks

with serious consequences, not to all possible risks. Additionally, the court required the introduction of expert testimony to establish the materiality of the risk in question, but relieved plaintiffs of any obligation to introduce expert testimony that it is the custom of physicians in the locality to give warnings in similar cases. *Id.* at 183.

■        In 1977, the legislature enacted ORS 677.097 to specify the steps that a physician must take to obtain the informed consent of a patient to a medical procedure or method of treatment. Or Laws 1977, ch 657, § 1. The enactment of ORS 677.097 "codified the essence of the *Getchell* decision * * * with some modification." *Tiedemann v. Radiation Therapy Consultants*, 299 Or 238, 247, 701 P2d 440 (1985). ORS 677.097 currently provides:

"(1)   In order to obtain the informed consent of a patient, a physician or podiatric physician and surgeon shall explain the following:

"(a)   In general terms the procedure or treatment to be undertaken;

"(b)   That there may be alternative procedures or methods of treatment, if any; and

"(c)   That there are risks, if any, to the procedure or treatment.

"(2)   After giving the explanation specified in subsection (1) of this section, the physician or podiatric physician and surgeon shall ask the patient if the patient wants a more detailed explanation. If the patient requests further explanation, the physician or podiatric physician and surgeon shall disclose in substantial detail the procedure, the viable alternatives and the material risks unless to do so would be materially detrimental to the patient. In determining that further explanation would be materially detrimental the physician or podiatric physician and surgeon shall give due consideration to the standards of practice of reasonable medical or podiatric practitioners in the same or a similar community under the same or similar circumstances."

Failure to comply with the foregoing statutory requirements can serve as a factual predicate for an action for malpractice. *See Arena v. Gingrich*, 305 Or 1, 7, 748 P2d 547 (1988) (court

remanded for trial negligence claim that physician violated ORS 677.097 by failing to obtain patient's informed consent to surgery).

## PROPOSED CHANGES TO ORS 677.097

The proposed measure in this case would make several additions to ORS 677.097. Among other additions, subsection (3) A of the proposed measure would require a "health care provider" or a "referring health care provider" to give an expanded notification to a female who seeks one particular medical procedure: an abortion. The expanded notification obligation would have both substantive and procedural components, which we outline below.

The proposed measure would require notification not only of the medical risks of the procedure, as under current law, but also of the probable gestational age of the unborn child and the medical risks to the female of carrying the unborn child to term. Subsection (3) A(2) of the proposed measure also would require a health care provider to provide the required information "in a conversation with the female in which the female may ask questions[,]" and would prohibit providing the information through a recording. The proposed measure would require that the notification precede, by at least 24 hours, the performance of the abortion.

Subsection (3) B of the proposed measure also would impose an additional notification obligation on "[a] health care provider who is to perform an abortion, a referring health care provider, an agent of the health care provider who is to perform the abortion or an agent of the referring health care provider." That subsection would require notice to the female that medical assistance benefits may be available for prenatal, childbirth, and neonatal care; that the father may be required to assist in the support of the child despite any offer to pay for the abortion; that the female has the right to certain information provided by the Department of Human Services; that the State of Oregon provides that information, that the information includes a description of an unborn child, and that it is available in print form and on a state-maintained Internet website; and that the party providing the notice will deliver the information from the State

of Oregon either in person 24 hours before the abortion or by certified mail 72 hours before the abortion. The party providing the notice described in that paragraph must do so either in person or by telephone 24 hours before the performance of the abortion.

The proposed measure would require the female to certify in writing that she has received the information that the health care provider must provide under the proposal. It also would require the health care provider or that party's agent to receive a copy of the female's written certification.

The proposed measure would require the Department of Human Services to print materials that, among other things, would inform a female about services that are available to her; the "probable anatomical and physiological characteristics of an unborn child at two-week gestational increments[;]" and abortion procedures commonly employed, the medical risks commonly associated with those procedures, the possible detrimental physiological effects of an abortion, and the medical risks of carrying a child to term. The proposed measure would require the State of Oregon's materials to include other information and would require the state to provide that information on a website, the resolution of which is "not less than 72 dots per inch," to print the information in 10-point type in multiple languages, and to update the information annually. The proposed measure also specifies the content of the required notification that it would require a health care provider to deliver, if possible, when a medical emergency compels termination of a pregnancy.

For purposes of addressing this ballot title dispute, three aspects of the additions to ORS 677.097 described in the proposed measure are significant. First, the proposed changes would alter current Oregon law that now requires physicians who provide abortion services to make specific disclosures to the physician's patients that explain (1) in general terms the procedure or treatment to be undertaken; (2) possible alternative procedures or methods of treatment, if any; and (3) the risks, if any, from the procedure or treatment. Under current law, the physician must ask the patient if she wants a more detailed explanation. If she does, then the physician must make additional detailed disclosures about

those three matters unless to do so would be materially detrimental to the patient.

Second, in general, the proposed measure would obligate a health care provider, who is to perform an abortion, to notify the female patient of an additional quantum of medical facts and opinions and a variety of data about the abortion procedure and other matters. The notification would be required to occur within the timelines and by the methods of communication that the proposed measure specifies. The proposed measure declares that, except in the case of a medical emergency, for which the proposed measure requires a separate notification to the pregnant female, "consent to an abortion is voluntary and informed only if, at least 24 hours before the abortion, the female receives by telephone or in person the information required by this section pursuant to the process and in the manner set forth" in the proposed measure.

Third, the proposed measure does not disturb the civil liability of a health care provider who conducts a medical procedure without the patient's informed consent. The proposed measure, if adopted, would render a pregnant woman's consent to a nonemergency abortion to be involuntary and uninformed unless the health care provider who performs the abortion, a referring health care provider, or their agent gives a notice to the woman that complies in every respect with all the substantive and procedural requirements for such a notice that the proposed measure identifies. In legal terms, any failure of compliance by a health care provider with every substantive and procedural notice requirement that the proposed initiative describes would expose the health care provider, under Oregon law, to potential civil liability for medical malpractice.

## THE CAPTION

ORS 250.035(2)(a) requires a ballot title for a state measure to include a 15-word caption "that reasonably identifies the subject matter of the state measure." This court has stated:

> "Because the caption is the cornerstone for the other portions of the ballot title, the caption must identify the subject matter of the proposed measure 'in terms that will not confuse or mislead potential petition signers and voters.' *Mabon v. Myers*, 332 Or 633, 637, 33 P3d 988 (2001)."

*Kain v. Myers*, 333 Or 497, 502, 41 P3d 1076 (2002).

The *Nichols* petitioners argue that an accurate caption must identify the proposed measure as a "prohibition" on abortion unless the medical provider complies with the new notification requirements regarding abortion that the proposed measure would add to the informed consent statute. As a description of the proposed measure's subject matter, petitioners' point is debatable. On the one hand, the proposed measure plainly contemplates a complete cessation of non-emergency abortion services to pregnant women during at least the 24-hour period following the required notification. Any physician who provided an abortion before expiration of the 24-hour waiting period following notification would face potential civil liability for malpractice due to the lack of informed consent. In a practical sense, and especially considering the perspective of the pregnant woman, those aspects of the proposed measure would operate to prohibit access to abortion services at least until the notification period expired.

On the other hand, the proposed measure, by amending the informed consent statute, heightens the physician's risk of civil liability for noncompliance with the statute without imposing a specific prohibition on the act of performing an abortion itself. Because the proposed measure would affect a female's informed consent to abortion—a civil law concept—questions exist about whether a female either may waive the statute or covenant to refrain from seeking its protection. We do not address those questions except to note that the proposed measure lacks any words of prohibition that might preclude a female's attempt to sidestep the additional notification requirements.

The foregoing indicates that it is not essential that the caption identify the proposed measure as a "prohibition"

on abortion to state accurately the proposed measure's subject matter. We conclude that, under our substantial compliance standard of review, the Attorney General's caption does not fall short of statutory requirements for that reason.[2]

■       The *Nichols* petitioners next argue that the Attorney General's caption falls short of statutory requirements because it fails to disclose that the proposed measure creates no medical emergency exception to the notice requirements when the life or health of the mother are at risk. Subsection (3) E of the proposed measure creates a special notification requirement that applies if compliance is "possible" in cases of medical emergency but otherwise does not modify a provider's authority in cases of medical emergency. Thus, as the Attorney General points out, the proposed measure leaves in place whatever the law might be regarding a provider's duty to comply with notice requirements or to take other actions regarding a medical emergency. That feature of the proposed measure, although important as a general matter, concerns what the proposed measure fails to create, not what it would create. Particularly in light of the word limitation that governs the caption, we cannot conclude that the Attorney General's caption falls short of statutory requirements for that reason.

## "YES" AND "NO" VOTE RESULT STATEMENTS

ORS 250.035(2)(b) and (c) require "simple and understandable" statements of not more than 25 words that describe the result if the voters approve the proposed measure and if they reject it. The *Nichols* petitioners challenge the Attorney General's "yes" and "no" vote result statements. They contend that the "yes" vote result statement must mention that the proposed measure would "prohibit abortions until after specified statements are made and after a waiting period." For the reasons discussed above, we conclude that the Attorney General's "yes" vote result statement is not deficient for the reason that the *Nichols* petitioners urge.

[2] ORS 250.085(5) provides:

"The Supreme Court shall review the title for substantial compliance with the requirements of ORS 250.035."

The *Nichols* petitioners also assert that the "no" vote result statement is insufficient because it fails to disclose that "current state law provides for a limited medical emergency exception." The Attorney General responds that, at present, ORS 677.097 contains no medical exception provision.

■ The *Nichols* petitioners argue that, under *Planned Parenthood of Southeastern Pa. v. Casey*, 505 US 833, 879-80, 112 S Ct 2791, 120 L Ed 2d 674 (1992), the absence of a medical emergency exception "may render a statute such as this unconstitutional." We conclude, however, that petitioners' argument falls short of demonstrating that the Attorney General has erred, under our "substantial compliance" standard, in failing to recite, in the "no" vote result statement, that current state law provides a medical emergency exception. The state law sources that petitioners cite are less than clear on that question. Moreover, *Casey* sustained a statutory definition of medical emergency against a constitutional attack. It is difficult to extrapolate from that holding that federal constitutional law compels Oregon to recognize a medical emergency exception as a matter of state law. Finally, even if *Casey* forbids states from restricting abortions under a medical emergency, as the *Nichols* petitioners advocate, the Attorney General properly may conclude that that proposition offers no point of contrast between the proposed measure and current law and, thus, the "no" vote result statement need not mention it.

The Attorney General's "yes" and "no" vote result statements do not fall short of statutory requirements for the reasons that the *Nichols* petitioners advocate.

## SUMMARY

■ The summary is a "concise and impartial statement of not more than 125 words summarizing the state measure and its major effect." ORS 250.035(2)(d). The purpose of the summary "is to help voters understand what will happen if the measure is approved, and * * * [it] should * * * be worded so that voters will understand the breadth of its impact." *Fred Meyer, Inc. v. Roberts*, 308 Or 169, 175, 777 P2d 406 (1989).

For the reasons expressed above, we reject the *Nichols* petitioners' argument that the summary must tell voters that the proposed measure "would prohibit abortions in the absence of specified statements and a waiting period, even in the case of a medical emergency." Nevertheless, for other reasons that the *Nichols* petitioners assert, the Attorney General's summary is not accurate and requires modification.

The Attorney General's summary purports to state current Oregon law as follows: "Current law requires physician to: obtain patient's informed consent for abortion by explaining in general terms the procedure, risks, alternative treatments/procedures; provide more information on request." ORS 677.097(2) provides, in part, that "[a]fter giving the explanation specified in subsection (1) of this section, the physician or podiatric physician and surgeon *shall ask the patient if the patient wants a more detailed explanation.*" (Emphasis added.)

The Attorney General's summary contains an error regarding current Oregon law. The phrase "in general terms" is part of ORS 677.097(1)(a), but does not appear in subsections (b) or (c). The Attorney General's summary indicates that the physician must explain "in general terms" each of the three items of medical information that ORS 677.097(1) sets out. However, the physician has an additional statutory duty to ask the patient if the patient wants a more detailed explanation than the one delivered under ORS 677.097(1). The Attorney General's summary fails to disclose that duty. The Attorney General's failure to refer in the summary to the physician's responsibility to ask the patient whether she desires a more detailed explanation incorrectly indicates to a reader that the patient now receives an explanation in general terms and nothing more, unless she happens to request more information. The Attorney General must modify the summary to address that error.

The Attorney General's summary indicates that the proposed measure would require the physician to deliver certain information in a "conversation" with the patient. The

summary then describes other information that the physician must convey but fails to disclose that the proposed measure would authorize delivery of that information by means other than a conversation, such as by a tape recording.

The Attorney General asserts that petitioners resist any reference to a "conversation" in the summary. Additionally, the Attorney General acknowledges that the proposed measure authorizes the physician to deliver some statements through a tape recording under certain circumstances but that the Attorney General's summary accurately reflects both provisions (*i.e.*, those relating to notice by conversation and by tape recording).

The Attorney General's arguments are wrong on both counts. The reference in the summary to notification by conversation for some components of the physician's information, coupled with silence about permissible methods of communication regarding other information, creates the incorrect inference that the proposed measure either would require the physician to deliver the entire notification in a conversation with the patient or would say nothing about other required and authorized methods of communication. If the Attorney General has determined that the method of communication is a necessary part of the summary, then the summary must refer to the authorized methods of communication in a way that accurately reflects the proposed measure's text. The Attorney General must modify the summary to address those errors. *See* ORS 250.085(8).

Ballot title referred to the Attorney General for modification.

Be It Enacted by the People of the State of Oregon:
ORS 677.097 is hereby amended by supplementing the law on informed consent of patient by adding section (3):

(3) Any woman seeking an abortion shall be given information regarding the health risks associated with the procedure and certain other information prior to obtaining an abortion. In order to prevent undue influence by an abortion provider, especially for-profit abortion clinic providers, the father of the child, or other persons, the abortion provider shall provide the required information; give the woman at least 24 hours to consider the information; and obtain the voluntary and informed consent of the woman in writing. Except as provided in subsection E, consent to an abortion is voluntary and informed only if, at least 24 hours before the abortion, the female receives by telephone or in person the information required by this section pursuant to the process and in the manner set forth below:

A. (1) A health care provider who is to perform an abortion or the referring health care provider shall inform the female patient by telephone or in person of:

(a) The medical risks associated with the proposed abortion, including but not limited to infection, hemorrhage, danger to subsequent pregnancies and infertility.

(b) The probable gestational age of the unborn child at the time the abortion is to be performed.

(c) The medical risks to the female of carrying the unborn child to term.

(2) A health care provider must provide the information required by this section in a conversation with the female in which the female may ask questions. The health care provider may not provide the information required by this section through a recording. The health care provider may provide the information required by this section by telephone without having first conducted a physical examination of or test on the female. The health care provider may base the information provided by telephone on facts the female provides to the health care provider and any other relevant information available to the health care provider.

B. (1) A health care provider who is to perform an abortion, a referring health care provider, an agent of the health care provider who is to perform the abortion or an agent of the referring health care provider shall inform the female that:

(a) Medical assistance benefits may be available for prenatal care, childbirth and neonatal care.

(b) The father of the unborn child may be required to assist in the support of the child, even when the father has offered to pay for the abortion.

(c) The female has the right to obtain the information described in sub-section D. below.

(d) The information described in sub-section D. of this section:

(A) Has been provided by the State of Oregon;

(B) Includes a description of an unborn child; and

(C) Is available in printed form and through an Internet website maintained by the Department of Human Services.

(e) Upon request, the health care provider who is to perform the abortion, the referring health care provider, an agent of the health care provider who is to perform the abortion or an agent of the referring health care provider will provide the information described in sub-section D. below in printed form:

(A) In person at least 24 hours before the abortion; or

(B) By certified mail, with delivery restricted to the female, mailed at least 72 hours before the abortion.

(2) The health care provider who is to perform the abortion, the referring health care provider, an agent of the health care provider who is to perform the abortion or an agent of the referring health care provider shall provide the information required by subsection (1) of this section in person or by telephone at least 24 hours before the abortion.

(3) Notwithstanding subsection (2) of this sub-section, the health care provider who is to perform the abortion, the referring health care provider, an agent of the health care provider who is to perform the abortion or an agent of the referring health care provider may provide the information required by subsection (1) of this section through a recording if the health care provider who is to perform the abortion, the referring health care provider, an agent of the health care provider who is to perform the abortion or an agent of the referring health care provider also records whether the female chooses to receive the information in printed form.

C.   Prior to an abortion:

(1) The female must certify in writing that the information required to be provided under sub-sections A and B above has been provided.

(2) The health care provider who is to perform the abortion or an agent of the health care provider must receive a copy of the written certification required by subsection (1) of this section.

D. (1) The Department of Human Services shall print materials that clearly inform a female·of:

(a) The services available to assist the female through pregnancy and childbirth and while the child is dependent upon the care of the female. As used in this paragraph, 'services ' includes adoption services, medical assistance benefits and support obligations of the father of a child born alive.

(b) The probable anatomical and physiological characteristics of an unborn child at two-week gestational increments.

(c) Abortion procedures commonly employed, the medical risks commonly associated with the procedures, the possible detrimental psychological effects of an abortion and the medical risks associated with carrying a child to term.

(2) The information required by subsection (1)(a) of this section must include:

(a) A list of the persons providing the services that includes each person's address, indexed geographically, each person's telephone number and a description of the services each person provides; or

(b) A toll-free, 24-hour telephone number through which a person may obtain the list.

(3) The information required by subsection (1)(b) of this section must:

(a) Include:

(A) All relevant information about the possibility of an unborn child's survival.

(B) Representations of the development of an unborn child at two-week gestational increments.

(b) Be objective and nonjudgmental.

144

(c) Convey only accurate scientific information about an unborn child.

(4) The representations required by subsection (3)(a) and (b) of this section must contain the dimensions of the unborn child and realistically depict the stages of development.

(5) The Department of Human Services shall make the information required by this section available through an Internet website. The department shall maintain the website's resolution at not less than 72 dots per inch.

(6) The information required by this section must be:

(a) In at least 10-point type.

(b) In each language that is the primary language of at least two percent of the state's population.

(c) Updated annually.

E. When a medical emergency compels termination of a pregnancy, the health care provider shall, if possible, inform the female that termination of the pregnancy is necessary to avert the death of the female or to avert substantial and irreversible impairment of a majo bodily function of the female.

ORS 435.496 is hereby amended to read: (1) Each induced terminatio of pregnancy that occurs in this state, regardless of the length of gestation, shall be reported to the Center for Health Statistics wit 30 days by the person in charge of the institution in which the indu termination of pregnancy was performed. If the induced termination o pregnancy was performed outside an institution, the attending health care provider shall prepare and file the report.

(2) If the person who is required to file the report under subsection (1) of this section has knowledge that the female who underwent the induced termination of pregnancy also underwent a foll up visit or had follow-up contact with a health care provider, the person shall include the fact of the follow-up visit or contact, and whether any complications were noted, in the report. If the person filing the report is not personally aware of the follow-up visit or contact but was informed of the visit or contact, the person shall include the source of that information in the report.

(3)(a) Reports submitted under this section shall not disclose the names or identities of the parents.

(b) The division may not disclose the identity of a physician performed or attempted to perform an abortion unless the physician consents to the disclosure. The division may not make information available in a manner that permits a person to identify a reporting physician unless the reporting physician consents to the manner of making the information available.

(c) The center may not, without the female's consent, disclose the name of a female upon whom a health care provider performed or attempted to perform an induced termination of pregnancy.

(4) A person required to file the report under subsection (1) of this section shall include in the report for each abortion:

(a) Whether the person who provided the information required by ORS 677.097(3)A provided the information as the health care provide who performed the abortion or as the referring health care provider

(b) Whether the person who provided the information required by ORS 677.097(3)A provided the information in person or by telephone.

(c) Whether the person who informed the female about the availability of the information described in ORS 677.097(3)D inform the female in person or by telephone.

(d) Whether the female received the information described in ORS 677.097(3)D in person, by mail or through the Internet website required by ORS 677.097(3)D or did not receive the information.

(e) Whether a medical emergency compelled termination of the pregnancy.

(5) These reporting requirements need not be implemented until the Department of Human Services has adequate computer capabilities to handle the extended reporting requirements.

(6)  Within 90 days after the effective date of this Act, the Department of Human Services shall prepare the materials described in ORS 677.097(3)D and make the materials available on an Internet website.

(7)  One or more of the chief petitioners of this act may intervene as a matter of right in an action challenging the validity of all or a portion of ORS 435.496.

(8)  If any part of this Act is held unconstitutional, the remaining parts shall remain in force unless the court specifically finds that the remaining parts, standing alone, are incomplete and incapable of being executed.