Submitted on the record November 28, 2005, ballot title referred to Attorney General for modification February 9, ballot title certified February 22, 2006 (340 Or 202)

David GREENBERG
and Nancy Bennett,
*Petitioners,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S52837)

127 P3d 1192

Margaret S. Olney, Portland, filed the petition on behalf of petitioners.

Elizabeth A. Gordon, Senior Assistant Attorney General, Salem, filed the answering memorandum on behalf of respondent. With her on the memorandum were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Kelly Clark, Portland, filed the memorandum for *amici curiae* Felicia Bautista and Brenda Cochran. With him on the memorandum was Kristian Roggendorf, Portland.

Before Carson,* Chief Justice, and Gillette, Durham, Riggs, De Muniz,** Balmer, and Kistler, Justices.

DURHAM, J.

---

* Chief Justice when case was submitted.

** Chief Justice when decision was rendered.

## DURHAM, J.

Pursuant to ORS 250.085(2), petitioners ask this court to review the Attorney General's certified ballot title for a proposed initiative measure that the Secretary of State has designated as Initiative Petition 51 (2006).[1] Petitioners are electors who timely submitted written comments to the Secretary of State concerning the Attorney General's draft ballot title and who therefore are entitled to seek review in this court. *See* ORS 250.085(2) (stating that requirement). This court reviews the Attorney General's certified ballot title to determine whether it substantially complies with the requirements of ORS 250.035(2). *See* ORS 250.085(5) (stating standard of review).

The Attorney General certified the following ballot title for Initiative Petition 51:

"REQUIRES 48-HOUR WRITTEN NOTICE TO
UNEMANCIPATED MINOR'S PARENT
BEFORE PROVIDING ABORTION TO
UNEMANCIPATED MINOR

"RESULT OF 'YES' VOTE:   'Yes' vote requires medical provider to give 48-hour written notice by certified mail to unemancipated minor's parent before providing an abortion, with certain exceptions.

"RESULT OF 'NO' VOTE:   'No' vote retains current allowing [*sic*] medical provider to provide a minor 15 years or older with medical treatment, including abortion, without parental notification.

"SUMMARY:   Current law provides that minor 15 years or older has right to medical treatment without parent notification. Medical provider has no obligation to obtain notification when performing medical treatment for minor, although provider may notify minor's parent of medical treatment without patient consent. Measure requires that provider notify unemancipated minor's parent 48 hours before performing abortion. Notification means written notice to parent by certified mail at parent's residence. Exceptions to notice requirement for documented medical

---

[1] The text of the proposed measure appears in the Appendix to this opinion.

emergencies, which do not include rape or incest. Uneman-cipated minor may apply for administrative hearing requesting abortion without notice to parent. Hearing shall be confidential, open only to minor, counsel, witnesses, judge. Failure to notify parent may subject provider to civil liability to parent, license suspension, or revocation. Other provisions."

Petitioners challenge the caption, the "yes" vote result statement, the "no" vote result statement, and the summary. The Attorney General agrees that this court should refer the ballot title to the Attorney General for mod-ification in two respects. We agree, and we discuss those required changes in greater detail below. We also conclude, in response to other challenges by petitioners, that the ballot title does not comply substantially with statutory require-ments in other respects, also discussed below, and we refer the ballot title for modification regarding those additional deficiencies.

### THE CAPTION MUST IDENTIFY THE PROPOSED MEASURE'S ENFORCEMENT SCHEME

■■ ORS 250.035(2)(a) requires a ballot title to include a caption, not to exceed 15 words, "that reasonably identifies the subject matter of the state measure." The caption's terms must not "understate or overstate the scope of the legal changes that the proposed measure would enact." *Kain/Waller v. Myers*, 337 Or 36, 40, 93 P3d 62 (2004). In *Kain/Waller*, this court stated:

"To determine the subject matter of a proposed meas-ure, we first examine its words and the changes, if any, that the proposed measure would enact in the context of existing law. We then examine the words of the caption to determine whether they reasonably identify the proposed measure's subject matter. *See Phillips v. Myers*, 325 Or 221, 225-26, 936 P2d 964 (1997) (illustrating principle)."

*Id.* at 41.

■ This court has recognized that the subject matter of a proposed measure may consist of more than one subject. *See Nesbitt v. Myers*, 328 Or 400, 403-04, 978 P2d 378 (1999)

(where proposed measure addressed "taxes" and "fees," caption addressing only taxes is inaccurate). In such a case, the caption must identify each subject or, alternatively, use other terms that more accurately convey the scope of the proposed measure. *Id.* at 404. What the Attorney General cannot do is select and identify in a caption only one out of multiple subjects and thus understate the scope of the proposed measure's subject matter. *See Novick/Sager v. Myers*, 329 Or 11, 16-17, 986 P2d 1 (1999) (illustrating principle); *Nesbitt v. Myers*, 328 Or at 404 (same).

■ Petitioners argue that the Attorney General's caption is deficient because it fails to identify one of the subjects of the proposed measure. Petitioners point to the enforcement scheme that the proposed measure would create to regulate and punish a failure to comply with the abortion notification requirement that the proposed measure would enact.

We first examine the proposed measure's text and then determine the extent to which that text would effect changes to Oregon law. *Kain/Waller*, 337 Or at 40. The text of the proposed measure addresses at least two main subjects. The first subject concerns the imposition of a requirement of 48 hours' written notice by certified mail to a parent in advance of the performance of an abortion on an unemancipated minor, together with the creation of a list of circumstances in which the notice requirement would not apply. The second subject concerns the creation of a two-pronged enforcement scheme that would come into play if any person performed an abortion in violation of the notification requirements. The second subject arises from section 8(1) of the proposed measure, which provides:

> "The failure of a person performing an abortion on an unemancipated minor or a ward to comply with section 3 of this 2005 Act [stating notification requirement]:
>
> "(a)   Gives rise to civil liability for all damages in favor of a parent of the minor or ward; and
>
> "(b)   Provides the Board of Medical Examiners a basis for refusing to grant, or [to] suspend, or [to] revoke a license to practice under ORS 677.190."

Each part of that remedial scheme enacts new legal requirements that would be significant to a potential petition signer or voter considering the proposed measure. The first remedy listed above creates a species of tort liability that presently has no counterpart in Oregon law. Part of the novelty of the stated tort remedy arises from the fact that the proposed measure affords a damages remedy against any person providing an abortion and in favor of a parent, *not* the minor female (that is, the patient) who allegedly had received an abortion without the required notification.

The second remedy described in the proposed measure would create a statutory basis for a range of administrative sanctions by the Board of Medical Examiners regarding "a license to practice under ORS 677.190." ORS 677.190 lists the grounds on which the Board of Medical Examiners could rely in refusing to grant, or in suspending or revoking, a license to practice medicine issued under ORS chapter 677. Again, there is no counterpart in current Oregon law for administrative disciplinary action against persons licensed to practice medicine for performing an abortion on an unemancipated minor female without first providing a parent with written notice of the kind described in the proposed measure.

In arguing that the caption is sufficient, the Attorney General purports to find support in this court's decisions in two ballot title cases that discussed disputes over references to enforcement provisions. As the following discussion discloses, that reliance is misplaced.

In *Wilkeson v. Myers*, 329 Or 540, 992 P2d 456 (1999), the proposed initiative measure would have required the practice of "sustainable forestry" on state and private land. Additionally, the proposed measure would have authorized citizens to bring legal actions to enforce its provisions. The petitioners challenged the "yes" vote result statement, ORS 250.035(2)(b), in the Attorney General's ballot title, arguing that it failed to mention the enforcement provision. The court agreed, observing that the enforcement provision "is a significant change in the law." *Id.* at 546. The court required inclusion of the phrase "authorizes citizen lawsuits" in the "yes" vote result statement. *Id.*

The Attorney General argues that, in *Wilkeson*, "[t]his court said *nothing* about inclusion of that type of statement in the *caption*." (Emphasis in original.) That is true; it also is beside the point. The *Wilkeson* court was responding to a disagreement over the "yes" vote result statement, not the caption. *Id.* Although the petitioners asserted other unrelated challenges to the caption in that case, they never claimed that the caption should have referred to the citizen-lawsuit enforcement mechanism. *Id.* at 544-45. As a consequence, the court correctly confined its discussion of the enforcement mechanism to the "yes" vote result statement. Thus, the fact that the *Wilkeson* court did not mention the absence of a reference to the enforcement mechanism in the caption does not justify the Attorney General's failure to mention that topic in the caption here.

In *Mabon v. Kulongoski*, 324 Or 315, 925 P2d 1234 (1996), the proposed initiative measure would have prohibited certain abortions and, among other things, would have authorized residents and certain business entities to initiate litigation to enforce the proposed measure. The Attorney General identified the latter provision as part of the proposed measure's subject matter by including the phrase "permits lawsuits" in the caption of the certified ballot title. *Id.* at 318. The petitioner challenged the inclusion of the phrase "permits lawsuits" in the caption, arguing that "permitting lawsuits is not the subject of the measure." *Id.* at 319. This court disagreed, stating:

"Creation of the right to bring lawsuits is part of the measure's subject. Inclusion of the words 'permits lawsuits' in the Caption, therefore, is permissible."

*Id.* at 319-20.

The Attorney General argues that the *Mabon* court held only that the disputed phrase "permits lawsuits" was a *permissible* element of the caption and did not hold that that phrase was a *required* element. Again, that argument is unresponsive to the issue here. In reviewing the caption in *Mabon*, the court's sole objective was to determine whether the Attorney General had erred in deciding that the phrase "permits lawsuits" properly identified part of the proposed measure's subject matter. Thus, the court's determination

that the disputed phrase was "permissible" accurately answered the specific question before the court.

We express no view about whether the two-pronged enforcement scheme described in the proposed measure is a worthwhile change from the standpoint of public policy. However, it is undebatable that the new enforcement scheme would enact major changes to Oregon law that likely would be significant to the voting public. Those changes to Oregon law are not mere procedural details regarding the notification requirement. By failing to give any hint of the new remedial scheme in the caption, the Attorney General has "understate[d] * * * the scope of the legal changes that the proposed measure would enact[,]" in violation of ORS 250.035(2)(a) and contrary to this court's decision in *Kain / Waller*. Consequently, we must refer the caption to the Attorney General for modification.

### THE "YES" VOTE RESULT STATEMENT MUST REFER TO THE ENFORCEMENT SCHEME

ORS 250.035(2)(b) requires that a ballot title incorporate "[a] simple and understandable statement of not more than 25 words that describes the result if the state measure is approved." Petitioners argue that the Attorney General's "yes" vote result statement is insufficient because it does not mention the proposed measure's enforcement scheme. The Attorney General agrees that "*Wilkeson* does require that the enforcement provisions be included in the 'yes' result statement." The Attorney General requests that the court refer the ballot title for modification in that regard. That request is well-taken.

■ The Attorney General also indicates that he has prepared the following revised "yes" vote result statement and proposes to incorporate it in the ballot title after referral:

> " 'Yes' vote requires abortion provider to give 48-hour written notice to unemancipated minor's parent before providing abortion. With certain exceptions. Authorizes lawsuits against provider."

Petitioners argue that the final clause of that statement, "Authorizes lawsuits against provider[,]" is inaccurate because it understates the scope of the enforcement scheme

in the proposed measure and, thus, understates the result of an affirmative vote. We agree. The statement must include some reference to the administrative discipline feature to describe accurately the enforcement scheme in the proposed measure. The Attorney General's proposed revision falls short in that respect.

THE "NO" VOTE RESULT
STATEMENT IS INCOMPLETE

The Attorney General's "no" vote result statement provides:

> "RESULT OF 'NO' VOTE:  'No' vote retains current allowing [*sic*] medical provider to provide a minor 15 years or older with medical treatment, including abortion, without parental notification."

The Attorney General requests that the court refer the "no" vote result statement for modification because it omits the word "law." We agree with that request.

Petitioners also argue that the Attorney General's "no" vote result statement is not accurate because it wrongly implies that the pertinent law that a "no" vote would retain is that which applies to "a minor 15 years or older." Petitioners point out that the proposed measure applies to any minor female, older or younger than 15 years of age and, accordingly, the "no" vote result statement must state the effect of a "no" vote in retaining current law that applies to all minors, not only those 15 years of age or older.

In *Novick/Crew v. Myers*, 337 Or 568, 577, 100 P3d 1064 (2004), this court concluded that the Attorney General satisfied ORS 250.035(2)(c) by "address[ing] the substance of current law *on the subject matter of the proposed measure* * * *" and by "summariz[ing] the current law accurately." (Emphasis in original.) In analyzing whether the Attorney General has satisfied ORS 250.035(2)(c) here, we first must consider the Oregon law that currently applies to the subject of the measure and then determine whether the Attorney General has summarized that law accurately.

As noted, section 3(1) of the proposed measure would require advance written notice of the performance of an abortion to the parent or guardian of an "unemancipated minor or a ward * * *." The proposed measure does not specially define the term "unemancipated." Section 2(3) of the proposed measure provides, " 'Minor' has the meaning given that term in ORS 125.005." ORS 125.005(6) defines "minor" as "any person who has not attained 18 years of age." Petitioners argue that, in light of the definition of "minor" in ORS 125.005(6), the Attorney General's focus is too narrow.

The Attorney General responds to petitioners' argument as follows:

> "Although the measure employs the phrase 'unemancipated minor' throughout, it does not define or discuss 'unemancipated.' There, too, the measure makes no reference to age. We therefore continue to believe that the status of the law as to minors under age 15 is beyond the scope of the certified proposal."

In considering the Attorney General's response, we take into account ORS 109.640, which provides:

> "Any physician may provide birth control information and services to any person without regard to the age of such person and a minor 15 years of age or older, may give consent to hospital care, medical or surgical diagnosis or treatment by a physician licensed by the Board of Medical examiners for the State of Oregon, and dental or surgical diagnosis or treatment by a dentist licensed by the Oregon Board of Dentistry, without the consent of a parent or guardian, except as may be provided by ORS 109.660."

That statute authorizes a minor female 15 years of age or older to consent to the performance of an abortion by a physician without the consent of the minor's parent or guardian. A parent or guardian still must consent to the performance of an abortion for a minor female 14 years of age or younger, unless some legal exception applies. A "no" vote on the proposed measure would retain those current statutory provisions.

The Attorney General's "no" vote result statement is insufficient, because it understates the scope of the pertinent Oregon law that a "no" vote would retain, and it describes

that law inaccurately. Oregon statutes provide several procedural routes by which minors of differing ages may become "emancipated" and thus enjoy certain rights of majority, for various reasons. *See* ORS 109.520 (lawfully married minor is deemed to have arrived at age of majority); ORS 419B.500 to 419B.558 (describing procedures for obtaining judgment of emancipation from juvenile court); ORS 109.675(2) (minor 14 years of age or older may be "emancipated," for purposes of statute, by living apart from parents or guardian and being self-sustaining for 90 days before obtaining certain medical treatment). However, ORS 109.640 does not confer emancipation on any minor. That statute does not justify the Attorney General's decision to limit the scope of the relevant Oregon law to that which applies to "a minor 15 years or older * * *."

The proposed measure clearly applies to *all* unemancipated minor females who have not attained 18 years of age. Under current Oregon law, if the patient is a female younger than 15 years of age, a doctor must obtain parental consent to an abortion, unless some legal exception applies. Parental consent necessarily involves some form of parental notification. The Attorney General's "no" vote result statement simply fails to disclose the current Oregon law on parental involvement in abortion decisions for minor females younger than 15 years of age.

THE SUMMARY IS INACCURATE IN TWO RESPECTS

ORS 250.035(2)(d) requires that a ballot title contain "[a] concise and impartial statement of not more than 125 words summarizing the state measure and its major effect." Petitioners argue that the Attorney General's summary is insufficient because it fails to state accurately the current law of Oregon as it relates to females younger than 15 years of age.

We agree. The Attorney General confined the scope of the description of current law in the summary to that which pertains to a "minor 15 years or older * * *." For the reasons discussed above in connection with the "no" vote

result statement, that description is too narrow. The summary requires modification to reflect pertinent Oregon law concerning females younger than 15 years of age.

■      There is one other difficulty with the summary. The Attorney General's summary uses two terms, "medical provider" and "provider," to describe a person who performs abortions on minor females and to whom the proposed measure's notification requirements and enforcement scheme would apply. Petitioners argue that the term "provider" fails to describe accurately the persons who might face administrative sanctions under the proposed measure. According to petitioners, although the proposed measure would prohibit any person from performing an abortion on an unemancipated minor without the required parental notification, only physicians would face potential administrative penalties for violating the notice requirement.

The relevant passage of the summary states, "[f]ailure to notify parent may subject provider to civil liability to parent, license suspension, or revocation." In context, the term "provider" is broad enough to refer to any person who performs an abortion in violation of the proposed measure. Although a violation of the proposed measure might expose any person (and, thus, any "provider") to civil liability for damages, the only persons who potentially might face administrative sanctions before the Board of Medical Examiners would be physicians, that is, persons licensed to practice medicine under ORS chapter 677.

The term "provider" in the sentence from the summary quoted above inaccurately describes the person whose conduct is governed by the provision on administrative sanctions. Without clarification, that sentence erroneously implies that persons other than physicians may face administrative sanctions under the proposed measure. The Attorney General's summary is insufficient in that respect.

CONCLUSION

■      On referral, the Attorney General must make changes to each part of the certified ballot title.[2] As this court

---

[2] We have considered other objections that petitioners have asserted regarding the Attorney General's ballot title. We reject those objections without further discussion.

recently recognized, changes to the ballot title on referral may "alter the calculus" of what constitutes an appropriate ballot title. *Wolf v. Myers (S52883)*, 340 Or 20, 26, 127 P3d 1160 (2006). The Attorney General has authority to make other modifications to the ballot title beyond those discussed in this opinion to achieve substantial compliance with statutory requirements. *Id.* In that connection, the Attorney General may deem it appropriate to consider the term "obtain" in the second sentence of the summary ("Medical provider has no obligation to *obtain* notification when performing medical treatment for minor * * *." (Emphasis added.)). That term appears to suggest inaccurately that, under current law, a medical provider must *receive* notification when performing medical treatment for a minor. We identify that question only and leave to the Attorney General the decision whether to make any modification in that regard on referral.

In summary, we conclude that the caption, both result statements, and the summary do not comply substantially with the requirements of ORS 250.035(2). We refer the ballot title to the Attorney General for modification. ORS 250.085(8).

Ballot title referred to Attorney General for modification.

APPENDIX
INITIATIVE PETITION 51 (2006)

Be It Enacted by the People of the State of Oregon:

SECTION 1.   Sections 2 to 10 of this Act are added to ORS Chapter 677 and may be cited as the Parental Involvement and Support Act.

SECTION 2.   As used in sections 1 to 8 of this 2005 Act:

(1)   "Abortion" means the use of a drug or device to intentionally terminate a pregnancy other than to produce a live birth or remove a dead unborn child.

(2)   "Medical emergency" means a medical condition that places the health of a pregnant woman in such serious jeopardy that failure to terminate the pregnancy or a delay in terminating the pregnancy would result in the death of the woman, serious impairment to bodily function or serious and permanent lack of function of any bodily organ or part.

(3)   "Minor" has the meaning given that term in ORS 125.005.

(4)   "Parent" means:

(a)   A biological parent;

(b)   If a minor has been adopted, an adoptive parent; or

(c)   If a court has appointed a guardian for a minor, the guardian.

(5)   "Ward" means a minor for whom a court has appointed a guardian under ORS chapter 125.

SECTION 3.   (1)   A person may not perform an abortion on an unemancipated minor or a ward until 48 hours after the parent receives written notice from the person of the proposed abortion by certified mail, return receipt requested, at the residence of the parent, with delivery restricted to the parent.

(2)   Receipt of notice under subsection (1) of this section is deemed to occur not later than 12 noon on the second mail delivery day after the mailing of the notice.

SECTION 4.   (1)   A person may perform an abortion on an unemancipated minor or a ward without the notice required by section 3 of this 2005 Act if:

(a)   Due to a medical emergency, notification is not possible and the person performing the abortion documents the medical emergency in the minor's or ward's medical record;

(b)   The Department of Human Services under section 6 of this 2005 Act or a court on review of an order by the department under section 7 of this 2005 Act authorizes the abortion; or

(c)   The person who is to perform the abortion provides actual notice to the parent in person.

(2)   A parent receiving notice under subsection (1)(c) of this section must provide the person providing notice with:

(a)   Current photographic identification issued by this state; or

(b)   A document on List A of United States Department of Justice Form I-9.

(3)   The person who performs the abortion for which the person provided notice under subsection (1)(c) of this section shall retain a copy of the proof of identification furnished by the parent in the medical record of the minor or ward for at least three years.

SECTION 5.   (1)(a)   Within three days after receiving an application of a pregnant minor or ward for an abortion without notice to a parent, the Department of Human Services shall request assignment of an administrative law judge from the Office of Administrative Hearings to consider the application.

(b)   On behalf of the department, the administrative law judge shall issue a final order authorizing the abortion if the administrative law judge determines that:

(A)   The applicant is mature and capable of giving informed consent to the abortion; or

(B) Obtaining an abortion without the notice required by section 3 of this 2005 Act is in the best interest of the applicant.

(2) The administrative law judge shall issue an order denying or granting the application under this section within seven calendar days after the office receives the application from the department.

(3) The department may not modify the form of order issued under this section or a finding of historical fact by the administrative law judge.

(4) ORS 183.630 does not apply to a hearing under this section.

(5) The chief administrative law judge of the Office of Administrative Hearings shall adopt rules for the conduct of hearings under this section.

SECTION 6.  A hearing under section 5 of this 2005 Act shall be held in private, and the administrative law judge shall exclude all persons other than the minor or ward, the counsel of the minor or ward, witnesses and representatives of the administrative law judge.

(2) Communications in a hearing held under section 5 of this 2005 Act are confidential. An individual participating in a hearing held under section 5 of this 2005 Act may not be examined about the communications in any civil or criminal action. Exceptions to testimonial privilege otherwise applicable under ORS 40.225 to 40.295 do not apply to communications made confidential under this subsection.

(3) Records of a hearing under section 5 of this 2005 Act are not open to public inspection and exempt from disclosure under ORS Chapter 192. The administrative law judge may disclose the records only to:

(a) The minor or ward;

(b) Counsel for the minor or ward; and

(c) Representatives of the administrative law judge.

SECTION 7.  (1) If an administrative law judge issues an order denying an application under section 5 of this 2005 Act,

the applicant may petition for judicial review of the order under ORS 183.484.

(2)     On review of an order issued under section 5 of this 2005 Act, the court shall preserve the anonymity of the applicant, and the applicant is entitled to proceed under a pseudonym.

(3)     (a)     the court shall give precedence to proceedings under this section over all other matters on the court's docket.

         (b)     (A)     The court shall issue the decision on review not later than 5 p.m. on the second business day after the filing of the petition for judicial review.

                 (B)     Upon the request of the applicant, the court may extend the time for decision. If the court extends the time for decision, the court shall issue the decision not later than 5 p.m. on the second business day after the applicant informs the court that the applicant is prepared to proceed.

(4)     If the court fails to issue the decision on review within the time specified in subsection (3) of this section:

         (a)     The application is deemed granted; and

         (b)     The clerk of the court shall issue a written statement to the applicant stating that the application is granted.

(5)     In a decision under this section, the court shall make special findings of fact based upon the evidence in the record and conclusions of law.

SECTION 8.     (1)     The failure of a person performing an abortion on an unemancipated minor or a ward to comply with section 3 of this 2005 Act:

         (a)     Gives rise to civil liability for all damages in favor of a parent of the minor or ward; and

         (b)     Provides the Board of Medical Examiners a basis for refusing to grant, or suspend, or revoke a license to practice under ORS 677.190.

(2)     Subsection (1) of this section does not apply if the person performing the abortion on the unemancipated minor or

ward establishes that the person reasonably relied upon the representations of the minor or ward regarding information necessary to comply with section 3 of this 2005 Act.

(3) The Department of Human Services, the Office of Administrative Hearings and the administrative law judge are immune from civil liability for actions taken in the course of a hearing under section 5 of this 2005 Act.

SECTION 9.   On January 15 of each year, the chief administrative law judge shall make available to the public a report of the number of applications made and granted under section 5 of this 2005 Act.

SECTION 10.   (1)   If any portion or portions of this act are declared invalid by a court of competent jurisdiction, the remaining portions of this act shall remain in full force and effect.

(2)   This act shall be construed to be consistent with the Constitution of the United States to the greatest extent possible. If any application of this section is found to be unconstitutional, remaining applications shall remain in force and effect.