Submitted on the record January 5, ballot title referred to Attorney General for modification April 13, modified ballot title (342 Or 728) certified May 22, 2007

Bill SIZEMORE,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S54201) (Control)

Chip TERHUNE,
Larry Wolf & Steven Novick,
*Petitioners,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S54217)
(Cases Consolidated)

157 P3d 188

Gregory W. Byrne, Portland, filed the petition for petitioner Sizemore.

Margaret S. Olney, Smith, Diamond & Olney, Portland, filed the petition and reply brief for petitioners Terhune, Wolf, and Novick.

Judy Lucas, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With her on the memorandum were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

DURHAM, J.

## DURHAM, J.

■ ■    In this proceeding for review of a ballot title, ORS 250.085(5), we address two petitions that challenge the Attorney General's certified ballot title for Initiative Petition 48 (2008). The proposed measure, if approved by the voters, would modify Oregon law regarding union security agreements in certain ways that we discuss below in greater detail.[1] We set out the text of the proposed measure in the Appendix to this opinion.

Petitioners are electors who timely submitted written comments to the Secretary of State concerning the Attorney General's draft ballot title and who, therefore, are entitled to seek review in this court. *See* ORS 250.085(2) (stating that requirement). We review the Attorney General's certified ballot title to determine whether it substantially

---

[1] A union security agreement is any one of several forms of collective bargaining contract provisions that entitle the employees' exclusive bargaining representative to compel all employees in the bargaining unit, as a condition of employment, to contribute financially to the cost of representation. *See Stines v. OSEA*, 287 Or 643, 646 n 1, 601 P2d 799 (1979) (describing operation of several types of union security agreements). Because of the principle of exclusive representation, a union assumes a legally imposed responsibility to fairly represent all bargaining unit members, including those who do not desire union representation, in the tasks of contract negotiation, grievance adjustment, and other activities that are germane to collective bargaining. *See Abood v. Detroit Board of Education*, 431 US 209, 221-22, 97 S Ct 1782, 52 L Ed 2d 261 (1977), which states:

"The designation of a union as exclusive representative carries with it great responsibilities. * * * Moreover, in carrying out these duties, the union is obliged 'fairly and equitably to represent all employees, * * * union and non-union,' within the relevant unit. A union-shop arrangement has been thought to distribute fairly the cost of these activities among those who benefit, and it counteracts the incentive that employees might otherwise have to become 'free-riders'—to refuse to contribute to the union while obtaining benefits of union representation that necessarily accrue to all employees."

(Citations omitted.)

The United States Supreme Court has concluded that union security agreements are "justified by the government's interest in promoting labor peace and avoiding the 'free-rider' problem that would otherwise accompany union recognition[,]" and that, as long as the union observes applicable safeguards against compelling dissenters to pay for purely ideological activities, such agreements do not violate employee constitutional rights. *Lehnert v. Ferris Faculty Ass'n*, 500 US 507, 517, 520-21, 111 S Ct 1950, 114 L Ed 2d 572 (1991). For a detailed discussion of the law relating to union security agreements, see *II The Developing Labor Law*, ch 26 (5th ed, John E. Higgins, ed. in chief, 2006).

complies with the requirements of ORS 250.035(2). *See* ORS 250.085(5) (stating standard of review).

The Attorney General certified the following ballot title for Initiative Petition 48 (2008):

"PROHIBITS NEGOTIATED CONTRACTS REQUIRING: PRIVATE EMPLOYEES TO JOIN UNION, REPRESENTED NONMEMBERS TO SHARE REPRESENTATION COSTS

"RESULT OF 'YES' VOTE:    'Yes' vote prohibits agreement between union and private employer to require union membership; prohibits union-employer contracts requiring represented nonmembers to share costs of representation.

"RESULT OF 'NO' VOTE:    'No' vote retains law allowing private employer and union agreements to require union membership, allowing union-employer contracts requiring represented nonmembers to share representation costs.

"SUMMARY:    Under current law, employees have the right to elect to be exclusively represented in collective bargaining by a union of their choosing, which represents all employees in that bargaining unit, including employees who decline to join the union. A union and private employer may negotiate an agreement requiring union membership. Union and public or private employer may negotiate agreement requiring represented nonmembers to share costs of representation. Payroll deductions must be: required by law, authorized by employee, or authorized by collective bargaining agreement. Measure prohibits agreements requiring union membership or requiring nonmembers to share representation costs. Prohibits transferring any payroll deduction to union without employee's written authorization. Authorizes lawsuit, damages, injunction, and civil penalties for any violation. Applies to renewal of existing contracts. Other provisions."

Each petition challenges each segment of the certified ballot title. For the reasons explained below, we conclude that certain challenges are well taken and we therefore refer the ballot title to the Attorney General for modification.

■    ORS 250.035(2)(a) requires a ballot title to include a caption, not to exceed 15 words, "that reasonably identifies the subject matter of the state measure." In *Kain / Waller v.*

*Myers*, 337 Or 36, 40, 93 P3d 62 (2004), this court stated that the terms used in the caption must not "understate or overstate the scope of the legal changes that the proposed measure would enact." *Kain / Waller* also explained how the court determines the subject matter of a proposed measure:

> "To determine the subject matter of a proposed measure, we first examine its words and the changes, if any, that the proposed measure would enact in the context of existing law. We then examine the words of the caption to determine whether they reasonably identify the proposed measure's subject matter. *See Phillips v. Myers*, 325 Or 221, 225-26, 936 P2d 964 (1997) (illustrating principle)."

*Id.* at 41; *see also Greenberg v. Myers*, 340 Or 65, 68, 127 P3d 1192 (2006) (applying same analysis). A caption "reasonably identifies" a proposed measure's subject matter, as ORS 250.035(2)(a) requires, "if within the [applicable word] limit, it states or describes the subject accurately and in terms that will not confuse or mislead potential petition signers and voters." *Greene v. Kulongoski*, 322 Or 169, 174-75, 903 P2d 366 (1995).

■    All petitioners contend that the Attorney General's caption is inaccurate and misleading because the phrase "PRIVATE EMPLOYEES" falsely suggests that the proposed measure applies to only private employees and, by inference, private employers. The Attorney General agrees that the proposed measure would apply to both the private and public employment sectors, but argues that the phrase "REPRESENTED NONMEMBERS TO SHARE REPRESENTATION COSTS" adequately communicates that point.

We disagree. The phrase "PRIVATE EMPLOYEES," when considered in context, inaccurately portrays the proposed measure as a regulation of the employment relationship between private employers and their employees. No other word or phrase in the caption adequately communicates the true scope of the proposed measure's subject matter: it would regulate the employment relationship between both private *and public* employers and their employees. The phrasing of the caption likely would mislead petition signers

and voters about the scope of the legal changes that the proposed measure, if approved, would enact. Because the caption fails to reasonably identify the subject matter of the proposed measure, we will refer the ballot title to the Attorney General for modification.

The parties raise other objections to the Attorney General's proposed caption. We address those objections, because they raise issues that the Attorney General is likely to face when he modifies the ballot title on referral.

■ Petitioner Sizemore objects to the phrase "PROHIBITS NEGOTIATED CONTRACTS REQUIRING: * * * REPRESENTED NONMEMBERS TO SHARE REPRESENTATION COSTS." He asserts that the real subject matter of the proposed measure "is an employee's right not to join or support a labor organization." He also argues that the proposed measure does not prohibit contracts that require represented employees to share representation costs and does not use the phrase "REPRESENTATION COSTS."

The Attorney General's caption is not deficient for those reasons. As a general matter, labor organizations have a legally imposed responsibility to represent fairly *all* members of the relevant bargaining unit of employees, not only those employees who become true members of the labor organization and, thus, agree to comply with its membership rules. The Attorney General concluded, and we agree, that the phrase "REPRESENTATION COSTS" embraces the various kinds of monetary payments to a labor organization or payments in lieu of dues that the prohibition in section 2b of the proposed measure would affect.[2] Section 3 of the proposed measure, as the Attorney General's caption states, clearly would prohibit negotiated contracts that would require bargaining unit employees who are nonmembers of the union to share in the costs of their representation. Current Oregon law permits the negotiation of agreements that, in one form or another, compel nonmembers of a union to share in the cost of their representation. The Attorney General did not err in concluding that the proposed measure would nullify that

---

[2] The proposed measure lists subsection "b" *after* subsection "c" in section 2.

component of current Oregon law. It is clear that the proposed measure, if approved by the voters, would permit nonmembers of a union to receive union representation services and yet free them of any obligation to share in the cost of those services. *See Bosak v. Myers*, 332 Or 552, 33 P3d 970 (2001); *Dale v. Kulongoski*, 321 Or 108, 894 P2d 462 (1995); *Crumpton v. Kulongoski*, 319 Or 82, 873 P2d 314 (1994) (so describing subject matter in similar proposed measures). The Attorney General's choice of the phrase "REPRESENTATION COSTS" is a reasonable one in this context. Although the proposed measure does not use that phrase, it is an appropriate shorthand description of the lengthy list of prohibited charges to employees set out in section 2b of the proposed measure. The Attorney General's use of that phrase does not deprive the caption of substantial compliance with legal requirements.

■     Petitioners Terhune, Wolf, and Novick argue that the beginning clause of the caption, "PROHIBITS NEGOTIATED CONTRACTS REQUIRING: PRIVATE EMPLOYEES TO JOIN UNION * * *[,]" is insufficient. They contend that current labor law does not authorize the negotiation of contracts that require private sector employees to become union members. They also contend that the focus of the caption on *private* employees falsely implies that the law regarding *public* employees and compulsory membership is somehow distinguishable from private sector labor law. They assert that the operative terms "PROHIBITS * * * REQUIRING" are misleading because they falsely suggest that current law permits compulsory union membership. They contend that the caption obscures the true subject of the proposal, which, in their words is "to allow employees to receive the benefits of union representation without sharing in the costs of that representation." Finally, they complain that the caption contains no reference to the penalties that the proposed measure requires when a person violates its requirements.

This court has held that, when a ballot title purports to describe existing law, it must do so accurately:

> "A ballot title should not misstate existing law, even by implication, and thereby create a spurious argument to support the measure's passage."

*Dale*, 321 Or at 113. In *Dale*, this court addressed a proposed measure that, if adopted, would have relieved public employees in Oregon of the burden of paying for the cost of their labor representation. In describing the proposed measure, the ballot title question asked:

> "Shall constitution ban requiring public employees to join unions, pay dues or representation costs, or forbid taking dues from wages?"

*Id.* at 110. Two petitioners challenged the accuracy of that phrasing, arguing that the phrase "ban requiring" was misleading because existing law did not compel union membership or authorize unions to negotiate contracts that compelled union membership by bargaining unit members. This court agreed with the challengers, stating:

> "The manner in which the phrase, 'ban requiring,' is used in the proposed Question presents difficulties that support petitioners' contention that the proposed ballot title misstates the existing law. The phrase 'ban requiring' can be read to imply that compulsory *union membership* presently is *required* by law and that the measure bans that requirement. Use of the word 'ban,' without more, would be sufficient to signify that what the proposed measure would do is prevent compulsory union membership. Adding the verb 'requiring' creates the mischief. 'Ban requiring' is not accurate unless there is a law 'requiring.' With respect to compulsory union membership, there is none. * * *"

*Id.* at 113 (emphasis in original).

    *Dale* is an authoritative statement that Oregon *public* sector labor law does not authorize the negotiation of contracts that compel bargaining unit members to become union members. *See Stines*, 287 Or at 649-50 (Oregon public sector labor statute authorized negotiation of "fair share" union security agreements requiring payment-in-lieu-of-dues to union to defray cost of representation, but not more stringent "union shop" agreement requiring union membership.). As a result, the Attorney General, in describing current law regarding public sector employment, cannot suggest correctly that a negotiated contract may compel public employees to join a union.

Three decisions of the United States Supreme Court confirm that unions also cannot compel *private* sector employees to become union members. In those cases, the Court has concluded that private sector union security agreements lawfully may compel bargaining unit members to contribute to the union an amount equivalent to union dues and initiation fees, but may not require *membership* in the union beyond the payment of those amounts. *Marquez v. Screen Actors,* 525 US 33, 46, 119 S Ct 292, 142 L Ed 2d 242 (1998); *Pattern Makers v. NLRB*, 473 US 95, 105-06, 105 S Ct 3064, 87 L Ed 2d 68 (1985); *Labor Board v. General Motors*, 373 US 734, 83 S Ct 1453, 10 L Ed 2d 670 (1963) (all so demonstrating).[3] In revising the ballot title caption for Initiative Petition 48 on referral, the Attorney General, in light of those cases, should avoid phrasing that suggests that current law authorizes the negotiation of contracts that require public or private sector employees to join a union. Current law contains no such requirement.

■ We also agree with petitioners Terhune, Wolf, and Novick that the caption must include some notification to the voters regarding the enforcement scheme that the proposed measure would enact.[4] As noted, the terms in a caption must not "understate or overstate the scope of the legal changes that the proposed measure would enact." *Kain / Waller*, 337 Or at 40. The remedial provisions in the proposed measure here are both novel and sweeping. The Attorney General

---

[3] Oregon has adopted legislation to regulate the rights and duties of certain private sector employees who fall outside the coverage of the National Labor Relations Board (NLRB). ORS 663.005 to 663.295. The legislature modeled ORS 663.125(1), the prohibition against membership-based discrimination, on its federal counterpart, 29 USC section 158 (a) (3), in *Pattern Makers*. No party argues "membership" under the Oregon statute has a different meaning than that stated by the United States Supreme Court in construing 29 USC section 158 (a) (3) in *General Motors*, *Pattern Makers*, and *Marquez*.

[4] The Attorney General argues that this court should disregard petitioner Novick's argument regarding the enforcement scheme because he did not make it below in his comments to the Secretary of State. We disagree. The draft caption included the phrase, "AUTHORIZES EMPLOYEE LAWSUIT, PENALTIES FOR VIOLATION." Petitioner Novick did not object to that phrase, and he incorporated a version of it ("AUTHORIZES LAWSUITS, PENALTIES") in his recommended revised caption. The Attorney General, however, ultimately struck that reference to the enforcement scheme in its entirety from the certified caption. We may consider petitioner Novick's argument, because it "concerns language * * * removed from the draft title * * *." ORS 250.085(6).

claims that those remedial provisions do not "change the current law so significantly as to constitute a separate subject matter." We disagree. The remedial provisions are equally unprecedented and much broader in scope than remedial provisions that this court previously has determined must be described in the caption. *See Greenberg v. Myers*, 340 Or at 70 (so illustrating).

We conclude that the extensive enforcement provisions in the proposed measure represent major changes in Oregon law that "likely would be significant to the voting public." *Id.* at 72. They are not "mere procedural details" of the other changes that the proposed measure would make to current Oregon law regarding security agreements. *Id.* The remedial scheme is an important aspect of the subject matter of the proposed measure. In failing to give the voters any notice of that subject matter in the caption, the Attorney General has understated the extent to which the proposed measure changes Oregon law. The Attorney General must address that inaccuracy on referral.

■ Petitioners Terhune, Wolf, and Novick also argue that the caption must be modified to state what they contend is its true subject, *i.e.*, to allow employees to receive the benefits of union representation without sharing the costs of that representation. They argue that, in *Dale, Crumpton, Bosak*, and *Sizemore v. Kulongoski*, 322 Or 229, 905 P2d 1146 (1995), this court, in addressing the adequacy of ballot titles for similar proposed measures, certified captions that explicitly informed voters that the measure would permit nonmembers of a union to receive representation services and benefits but avoid any responsibility to pay for them. The Attorney General argues that the cited cases are distinguishable.

■ Petitioners are correct in part. In context, the subject matter of the proposed measure consists of two identifiable legal changes. The proposed measure will eliminate any employment condition requiring any person to pay money to a union, *and*, thereby, it will entitle employees to receive the union's legally mandated representation services without sharing in the cost of those services. The certified caption refers to only one of those subjects. Consequently, it "understate[s] * * * the scope of the legal changes that the proposed

measure would enact." *Kain / Waller*, 337 Or at 40. The Attorney General must address that deficiency on referral. We reject, however, petitioner's contention that the Attorney General must label the union's services as the "benefits" of union representation. Voters may interpret that terminology as an argument against the proposed measure.

■■ We turn to petitioners' challenges to the "yes" and "no" vote result statements. ORS 250.035(2)(b) and (c) provide that a ballot title must include two 25-word statements that accurately describe in simple and understandable terms the results of approval and rejection of the proposed measure. The "yes" vote result statement should reflect the most significant and immediate consequences of the adoption of the proposed measure. *Pelikan / Tauman v. Myers*, 342 Or 383, 390, 153 P3d 117 (2007).

Petitioner Sizemore argues that the Attorney General's "yes" vote result statement is insufficient, because it focuses too narrowly on the prohibition of contracts that require represented nonmembers of a union to share in the cost of their representation by the union. He asserts that the proposed measure would prohibit employers from requiring any payment to a labor organization as a condition of employment. In a similar vein, he also argues that the Attorney General's "no" vote result statement is insufficient because it fails to state that a "no" vote would "retain[ ] law allowing employers to require employees to join or pay money to unions as condition of employment." We reject those challenges for the reasons discussed above.

Petitioners Terhune, Wolf, and Novick contend that the Attorney General's "yes" and "no" result statements suffer from the same shortcomings that they raised with respect to the caption. We agree. As noted, current law does not permit the negotiation of collective bargaining agreements that compel employees to become union members. The Attorney General on referral must revise both result statements to recite correctly what current law requires in that regard. We also agree that the most significant result of enactment will be that nonmembers of a union will be entitled to refuse to pay for the cost of union representation services that the union must provide to all employees. Additionally, the "yes"

vote result statement must describe in some manner the new enforcement scheme that the proposed measure would create.

These petitioners also contend that the "no" vote result statement must state that, under current law, unions have a duty to represent all employees regardless of union membership or financial contributions. As noted, we have required the Attorney General to revise the "no" vote result statement to describe correctly the state of the law that a "no" vote will retain, including a reference to services that the union must provide to all employees. Beyond that, we do not discern why the "no" vote result statement requires an even more detailed description of a union's duty of fair representation.

■ We turn to the ballot title summary. A ballot title must contain a 125-word summary that concisely and impartially describes the "measure and its major effect." ORS 250.035(2)(d). The goal of the summary is to " 'help voters to understand what will happen if the measure is approved' " and the " 'breadth of its impact.' " *Mabon v. Myers*, 332 Or 633, 640, 33 P3d 988 (2001) (quoting *Fred Meyer, Inc. v. Roberts*, 308 Or 169, 175, 777 P2d 406 (1989)).

■ Petitioner Sizemore challenges the Attorney General's summary. He asserts that the summary fails to notify the reader that a union may elect to bargain for only its members and, unless a union chooses to become the exclusive bargaining representative for a bargaining unit of employees, it never assumes a duty to fairly represent nonmembers of the union.

Those legal propositions are correct as far as they go. However, petitioner Sizemore has not demonstrated that those propositions have more than a bare theoretical connection to the proposed measure. He refers to the absence of any legal rule in state or federal statutes requiring a union to become an exclusive bargaining representative for a bargaining unit of employees. But the Attorney General was entitled to decline to mention that facet of current law, because it does not concern either the measure or its major effect.

■ Petitioners Terhune, Wolf, and Novick challenge the Attorney General's summary, relying on the same objections that they asserted against the Attorney General's caption and result statements. For the reasons expressed above, the Attorney General must alter the statements in the summary that a union and a private employer may negotiate "an agreement requiring union membership[ ]" and that the measure "prohibits agreements requiring union membership * * *." Those statements do not accurately reflect current law.

■ We agree with these petitioners that a major effect of the proposed measure is that it entitles nonmembers of a union to avoid sharing in the costs of the representation services that the union, as exclusive bargaining representative, must provide to all employees. In *Dale*, which concerned a proposed measure that was similar to the instant measure, this court concluded that the summary was insufficient because it failed to state expressly that, under the proposed measure, "employees who are not members of the union, but who are members of the bargaining unit, will receive representation without cost." 321 Or at 114. Consequently, this court modified the summary to require inclusion of the following sentence: "Bans requiring nonunion public employees to share union representation costs; unions must represent such employees without charge." Relying on *Dale*, we conclude here that the absence from the summary of a similar statement is a defect that requires correction on referral.

Finally, petitioners Terhune, Wolf, and Novick object that the Attorney General's summary fails to explain to the voters that the proposed measure would authorize the recovery of "exemplary" damages from anyone who violates its requirements. We conclude that the term "damages" in the summary is a minimally sufficient reference to the damages aspect of the enforcement scheme. Although we do not sustain petitioners' objection in that regard, the Attorney General may revisit that question on referral.

We reject the other arguments that the parties raise without further discussion. For the reasons expressed above, we refer the ballot title to the Attorney General for modification. ORS 250.085(8).

Ballot title referred to Attorney General for modification.

## Appendix
### Initiative Petition 48 (2008)

Be It enacted by the People of Oregon:

The following new sections shall be added to and made part of the Oregon Revised Statutes:

**Section 1.**  This Act shall be known as the Oregon Right to Work Act.

**Section 2.**  No person shall be required, as a condition or continuation [*sic*] of employment, to:

a.  become or remain a member of a labor organization;

c. [*sic*]  cease being a member of a labor organization;

b. [*sic*]  pay any dues, fees, assessments, or other similar charges, however denominated, of any kind or amount[,] to a labor organization; or pay to any charity or other third party, in lieu of such payments, any amount equivalent [*sic*] to or [a] pro rata portion of dues, fees, assessments, or other charges required of members of a labor organization.

**Section 3.**  Any agreement, understanding or practice, written or oral, implied or expressed, between any labor organization and employer, which violates the rights of employees as guaranteed by provisions of this Act, is hereby declared to be unlawful. Deducting money from an employee's pay and transferring in any manner all or part of that money to a labor organization without the employee's written authorization is a violation of this Act.

**Section 4.**  Any person injured as a result of any violation of the provisions of this Act may bring action in the Circuit Court of the person's residence to recover any and all damages of any character resulting from such violation, including exemplary damages as well as recovery of costs and reasonable attorney fees associated with the original determination and any appeal thereof. Such remedies shall be independent of and in addition to the penalties and remedies proscribed in other provisions of this Act.

**Section 5.**  Any person injured as a result of any violation or threatened violation of the provisions of this Act shall be

entitled to injunctive relief against any and all violators or persons threatening violations.

**Section 6.** The provisions of this Act shall be enforced by the Attorney General who shall have exclusive authority, among government agencies, to investigate and bring enforcement action. Such enforcement action shall not replace or restrict any civil action brought by an injured person. The Attorney General may seek injunctive relief as to actual or threatened violations of this Act, and may seek civil penalties of up to $10,000 per employee whose rights under this Act have been violated. Any enforcement action may be brought in the Marion County Circuit Court or in the Circuit Court of any county where the employer, labor organization, or injured person is located.

**Section 7.** If multiple enforcement actions are brought in more than one Circuit Court, they may be consolidated to be heard in one Circuit Court, by agreement of the parties. If the parties do not agree, all such proceedings shall be consolidated for consideration by the Marion County Circuit Court.

**Section 8.** For purposes of this Act:

a.) "Employer" means all persons, firms, associations, corporations, public employers, public school employers, and public colleges, universities, institutions, and education agencies who employ one or more persons [*sic*].

b.) "Labor organization" means any organization of any kind, or agency or employee representation committee, association or union, which exists for the purpose, in whole or in part, of dealing with employers concerning wages, rates of pay, hours of work, other conditions of employment, or other forms of compensation.

**Section 9.** The provisions of this Act shall not apply:

a) to employers and employees covered by the Federal Railway Labor Act;

b) to federal employers and employees;

c) to employers and employees on exclusive federal enclaves; or

d) to any employment contract entered into before the effective date of this Act. However, the provisions of this Act shall apply to any renewal or extension of any existing contract.

**Section 10.** If any provision of this Act or the application of any such provision to any person or circumstance should be held invalid by a Court [*sic*] of competent jurisdiction, the remainder of this Act, or the application or its provisions to persons or circumstances other than those to which it is held invalid, shall remain in effect.